JOHN A. STEVENS and others *vs.* THE BUFFALO AND NEW YORK CITY RAIL ROAD COMPANY and others.

As between mortgagees and judgment creditors or purchasers, the rolling stock of a rail road company — such as locomotive engines, tenders, tenders, passenger, freight or other cars, shop-tools and machinery — is *personal estate ;* and will not pass as *real estate,* or fixtures, under a mortgage executed by the company ; nor can it be held by the mortgagee by virtue of his mortgage, as personal estate, unless he has caused such mortgage to be filed as a *chattel mortgage,* according to the provisions of the statute relating to chattel mortgages.

If a subsequent judgment creditor levies upon such rolling stock, and sells the same, by virtue of an execution issued upon his judgment, the purchaser will be entitled to hold the same, discharged of the lien of the prior mortgage.(a)

Notice to a judgment creditor, of an existing mortgage, is no answer to his objection that the mortgage has not been filed.

APPEALS by the plaintiffs, and by the defendant Patchin, from a judgment entered upon the report of a referee. The action was brought to foreclose a mortgage executed by the defendant, The Buffalo and New York City Rail Road Company, to the plaintiff John A. Stevens, as trustee for the holders of certain bonds issued by the said rail road company, to secure the payment of which bonds the mortgage was executed. Answers were put in by certain of the defendants, among whom was Patchin, upon which issues were joined, and the cause was referred to the Hon. Joseph G. Masten to try the issues made by the defendants who had answered, and to compute the amount due on the mortgage, and make the proper examinations, and report as to the defendants who had failed to answer. The issues were tried before the referee, who made his report, and judgment was entered thereon. The facts proved on the trial, as they appeared from the report of the referee and the exceptions of the respective parties upon which they have appealed, are as follows : On the first day of November, 1852, the defendant, The Buffalo and New York City Rail Road Company, executed the mortgage in

(a) See the next case, *Beardsley* v. *The Ontario Bank and others,* S. P.

)

question to the plaintiff Stevens. The mortgage contained recitals setting forth the facts that the rail road company was engaged in extending and constructing its road from Attica to Buffalo; that for that purpose the company had resolved, in pursuance of the power conferred upon it by law, to borrow from time to time such sums of money as it should deem best, not exceeding five hundred thousand dollars, and for the security of such loans to execute and issue the bonds of the company for one thousand dollars each, payable on the first day of November, 1860, with coupons attached for the interest on such bonds at the rate of seven per cent per annum, payable semi-annually; that the bonds were to be all equally secured by the mortgage, and to be in the form set out in the mortgage. The mortgage contained a blank form of the proposed bonds, which contained an acknowledgment of indebtedness on the part of the company of one thousand dollars, payable as already stated. It also contained a statement that the bond was one of a series of five hundred of like tenor, date and amount, and that the holder was entitled to the security derived from a mortgage bearing even date with the bond, duly recorded, on all the lands and *fixtures, and all other property* and appurtenances of the company, from Attica to Buffalo, executed to John A. Stevens, to secure the payment of the bonds. The mortgage then proceeds to state that for better securing the persons " who shall lend the said money *or hold the said bonds*" the payment of said money with interest, &c., the company grants &c. certain real estate described in the mortgage, extending in and from the town of Attica to a point in the city of Buffalo five hundred and three and a half (503½) feet easterly from the easterly line of Michigan street in said city, and also all the land on which any part or portion of the said rail road &c. of the company "*shall or hereafter may be constructed,*" between the last mentioned point and the said easterly line of Michigan street, and " all tolls, incomes, issues and profits to be had from and all franchises relating to the same," whenever the said company

should be in default in making said payments, &c., and all the locomotive engines, tenders, passenger cars, freight or other cars, shop-tools and machinery now owned, "*or hereafter to be acquired and owned*," by said company.

The mortgage also contained a covenant that the money loaned on said bonds should be applied in good faith to the construction of the road, and that the company would execute such further assurances as should from time to time be necessary or advised by the counsel for the mortgagee, to carry out the objects of the mortgage, or to enable the same to comprise the property expressed to be mortgaged or so intended to be, whether then acquired or thereafter to be acquired. The mortgage was duly proved and recorded in the clerk's offices of the several counties through or into which the road ran, or in which it had any real estate, *but the mortgage was never filed as a chattel mortgage.* The company executed and issued five hundred bonds, each for the amount and in the form of the bond set forth in the mortgage, which were numbered from one to five hundred inclusive, and negotiated them to divers persons who advanced money upon them, which was necessary to complete and operate the road. The bonds were mostly negotiated by the defendant Patchin, on behalf of the company. From 1848 to 1855 Patchin was a director of the company, and its chief financial officer. Four hundred and ninety-two of the bonds so executed and negotiated were produced and proved before the referee, upon which there was received $492,000. The route of the rail road was located before the mortgage in suit was executed, and was subsequently built substantially as located before the execution and delivery of the mortgage.

Between the point 503½ feet east of Michigan street and that street the company had not extended the road, except a temporary track about 80 feet east of the first mentioned point, on the lands of the central rail road company, but the company had acquired all the lands between that point and Michigan street, except three small lots. The title to most

of said lands had been acquired before the execution of the mortgage. Upon a part of the lands covered by the mortgage there were liens prior to the mortgage, which Patchin paid off with his own funds, previous to August 19th, 1856. He also paid, with his own funds, the purchase money of some of the lands acquired since the execution of the mortgage, and took the title to such lands in his own name, to secure the payment of the purchase money advanced by him. At the time of the delivery of the mortgage the company owned six engines and tenders, numbered from one to six; eight passenger cars, numbered from one to eight; four baggage cars, numbered from one to four; two mail cars, numbered one and two; and thirty-five freight cars, numbered from one to thirty-five.

Subsequent to the delivery of the mortgage, and in the course of a year thereafter, the company purchased other engines and cars, some of which were not in existence at that time, and also shop-tools and machinery. Some of the engines, six in number, subsequently acquired, were contracted for when the mortgage was executed; four other engines, and various passenger and freight cars, hand cars, rolling stock, tools and machinery were purchased at a subsequent time during the year, and put upon the road for use, and have ever since that time been used there by the company, in transacting its ordinary business, and have never been used any where but on said road, except that some of the cars have been run from Hornellsville (where said road forms a connection with the New York and Erie Rail Road,) to New York and back, in the transaction of business. In December, 1853, Patchin recovered a judgment against the company for $155,641.78, which was duly docketed and executions were issued thereon, upon which all the cars, engines, shop-tools and machinery then belonging to the company were seized by the sheriffs to whom such executions were directed, and sold at sheriff's sale, Patchin being the purchaser. The directors of the company recognized and sanctioned this sale and the purchase made by

Patchin. At the time of said sale the company had no funds
or means to pay the said judgment and prevent a sale of the
property.

On the first day of September, 1853, the company executed
to the plaintiff, John A. Stevens, a mortgage similar in its
terms and objects to the mortgage in suit, upon the road from
Hornellsville to Buffalo, including the branch or freight track,
with all the appurtenances, &c. This mortgage also included
in its terms the rolling stock, tools and machinery, &c. In
February, 1855, an action was commenced for the foreclosure
of this mortgage. The usual judgment for sale and foreclo-
sure was obtained in that action, and the liens and claims of
Patchin for moneys advanced by him to discharge prior liens
upon, and to pay the purchase money of, certain lands inclu-
ded in both mortgages, as hereinbefore stated, were estab-
lished by the said judgment, and were directed to be paid out
of the first moneys arising upon the sale to be made under
said judgment. The lands of which Patchin had paid the
purchase money were ordered to be included in the sale, and
if any other person than Patchin became the purchaser he was
directed to quitclaim to such purchaser. The rail road and
rolling stock were sold under this judgment, and the whole
bid off by A. D. Patchin, to whom the referee executed a con-
veyance. The property produced on such sale more than the
costs and expenses of the action and sale and the preferred
liens of Patchin. The latter gave to the referee who made the
sale written instructions to pay the bondholders in full first,
and consented to receive the balance of the proceeds of the
sale which might remain after the bondholders were paid, in
full satisfaction of the sums adjudged to be paid to him.
Patchin paid upon said sale the costs of the action and ex-
penses of the sale, and delivered to the referee the receipts of
the bondholders for the amount of the proceeds going to them,
and made an arrangement with them simultaneously with the
delivery to him of the referee's deed of the real and personal
property, and delivered a mortgage to James G. King and

William C. Pickersgill, in trust to secure the payment of the debts due to the bondholders.    Upon these facts the referee decided that the mortgage in suit was a valid and subsisting lien upon that part of the company's road between Attica and Buffalo, and upon all the lands described in the mortgage, together with the railways, side tracks, branches and all other fixtures and superstructures and erections erected upon the lands described in the mortgage, and upon all tolls, incomes, issues and profits to be had from, and all franchises relating thereto, *without respect to the time when the title to the lands mentioned in the mortgage were acquired by the company;* that as against the plaintiffs and the purchasers under the judgment, the liens existing upon the lands prior to the company's title, and paid by Patchin as above stated, were discharged, and that as against the same parties Patchin was not entitled to hold the lands of which he had paid the purchase money as above stated; that those lands should be included in the sale to be made under the judgment to be entered on the report; and that Patchin should quitclaim the same to the purchaser at the sale.    The referee further decided that the plaintiffs were entitled to a judgment for the sale of the engines, tenders and cars owned by the company at the time of the delivery of the plaintiffs' mortgage, and that the plaintiffs were not entitled to a judgment for the sale of any other of the engines, cars, shop-tools and machinery, except such tools and machinery as were so attached to the realty as to be fixtures between vendor and vendee.

During the trial exceptions were taken by the respective parties, in proper time and form, to raise the various questions considered in the opinions.

*S. G. Haven,* for the plaintiffs.

*J. G. Hoyt,* for the defendant Patchin.

GREENE, J. (After discussing some questions not necessary to be mentioned here.) The most important question in this case remains to be considered. That question relates to the nature of the property known as the rolling stock of the company, including its engines and cars of various kinds and the property described as shop-tools, machinery, &c.; all of which is used, in one way and another, in the operations of the rail road; and so far as the title to this class of property is involved in the case, it turns upon the question whether such property is personal property or fixtures ; or, to state the question in a simpler form and so as to present its precise legal aspects in a clear light, and the opposing views of the parties in plainer contrast, whether it is *personal* or *real* property. If such property, after it is purchased for the use of the company and put upon its road, is *ipso facto,* so affixed to the realty as to become, in judgment of law, a part of the realty, the lien of the mortgage attached to the property in question, as fast as it was acquired, and the plaintiffs are entitled to it, without regard to the time of its acquisition.

If, on the contrary, after it is placed on the road, it retains its character of personal property, which it clearly was before, the plaintiffs' claim must fail, irrespective of the question whether a mortgage of personal property to be acquired after its execution is sufficient to give a title to or create a lien upon such property, in equity. For if such title or lien can be so created, it relates to personal property, and the law applicable to that species of property is controlling on questions both as to the original and continuing validity of the title or lien. The plaintiff's mortgage was in its terms a good chattel mortgage as to all personal property to which it was applicable, but it was never filed as a chattel mortgage, as our statute requires, (*Laws of* 1833, *p.* 402, § 1,) in order to preserve its lien as against creditors ; and as this question arises between the mortgagee and a creditor of the mortgagor, the mortgage, so far as it relates to the personal property, is void under the provisions of the statute last cited, and the plain-

tiffs' title, so far as it rests upon the mortgage, must fail. This was conceded on the argument. But the plaintiff claims that the rolling stock, &c. "acquired after the date of the mortgage and used by the company in operating the road, are fixtures, or *in the nature of fixtures,* and are appurtenant to the road and other mortgaged property." As to the same kind of property existing and on the road at the date of the mortgage, the plaintiff asserts a title on another ground, which will be considered hereafter. The alternative phrase "*or in the nature of fixtures,*" used in the plaintiffs' points to describe the character of the property in question, is too indefinite and vague for any practical purpose. There is not, to my knowledge, any intermediate state or condition between property regarded as personal either in the legal or popular sense of the term, and that which though originally personal has been so affixed or attached to real property as to become merged in and part and parcel of the realty. It must, in the nature of things, be one or the other. It cannot be both, nor can it for any legal purpose be said to partake of the nature of both. The property in question then, as has already been stated, is either personal or real property, and the plaintiffs' title depends upon the decision of the question as to which class the property belongs to.

As an original question, I confess I should find it difficult to suggest a plausible ground of doubt in relation to it. None of the property in dispute is or can be affixed or attached to the real estate for any purpose for which it was intended to be used; nor indeed, without entirely defeating that purpose, within any sense of those terms as they are used as distinctive tests of the difference between personal property and fixtures. The engines, cars &c., composing the rolling stock, it is well known, are manufactured for sale to the different roads in the process of construction and in operation throughout the country. They are as well adapted for use on one road as another of the same width or gauge as the road for which they were built or on which they are in use; and partly worn stock of

this kind is frequently sold from roads on which it has been used, for the purpose of replacing it by new and improved machinery. It has always heretofore been treated as personal property liable to seizure and sale on execution, and has often by means of that process been appropriated to the payment of the debts of the company.

But within the last year it has been claimed for the first time, that the universal opinion of the legal profession and the business community, which has been acted upon so often and by so many parties, and has been sanctioned by the acquiescence of all, including the courts, the legal profession and parties for the last twenty-five years, is founded in a radical mistake as to the nature of such property; and in addition to all this, it is claimed that property in familiar use long before rail roads were known, which has always been and is now held, and is by the parties who advance this new doctrine conceded to be personal property under other circumstances and when held by other owners, is, by reason of the fact that it is owned and in the use of rail roads converted into real estate. In a word that by such use its nature is, *ipso facto*, changed. The proposition is a novel one, to say the least of it, and the sanction, direct and indirect, which it has received from judicial opinions and authority, if nothing else, entitles it to grave consideration. I will, therefore, proceed to examine some of the cases which have been cited as authority for this position.

The case of *Coe* v. *Hart and others*, (*Am. Law Reg. Nov.* 1857,) decided in the circuit court of the United States for the northern district of Ohio, by Mr. Justice McLean, in July term, 1857, presented a controversy between the mortgagees named in the first mortgage (which included all property connected with the road) and the holders of certain bonds secured by a subsequent mortgage, who had obtained a judgment at law on their bonds and issued an execution, which had been levied on some of the cars and engines belonging to the company which executed the mortgage. Some of the property levied on was acquired by the company after the execution of

Stevens *v,* Buffalo and New York City R. R. Co.

the first mortgage, under which the complainants claimed. This mortgage contained a covenant on the part of the company to execute any further conveyance necessary to transfer to the mortgagee any property acquired subsequent to the mortgage, and comprehended in the description. The mortgage was recorded in all the counties through which the road was to be constructed. The complainants filed a bill for a perpetual injunction restraining the defendants from selling the property levied upon by them. The court held that the mortgage created a valid lien in equity upon, and attached to, subsequently acquired property as fast as it was acquired. It was further held that the holder of a bond secured by a mortgage could not proceed by judgment and execution at law to sell any of the property upon which the mortgage was secured; that such sale would not convey to the purchaser any exclusive right to the property so sold, or divest the equitable rights of other bondholders in such property, and that the claim of the bondholder must be prosecuted in equity, where all who have a like interest in the security of the mortgage may be made parties and have their rights adjusted. It does not directly appear from the case whether any other filing or recording of the mortgage than was shown was necessary to preserve its lien as a mortgage of chattels. But I infer from the reasoning of the opinion, that the court regarded the mortgage as valid in that aspect. It is nowhere intimated in the case that the property in controversy was real estate and bound as *such* by the mortgage. There are some general remarks in the opinion to the effect that the rolling stock is indispensable to the operation of the road and the earning of profits, &c. and that the mortgage having been taken upon the road as a whole in complete operation, the lien of the mortgage ought not to be displaced and its security impaired by permitting a sale of any of its property essential to its operation, on execution. But when the opinion is read in connection with the description in the mortgage, which contained apt and sufficient terms to pass a title to the property in question, and in the

light of the equitable rule before alluded to, and upon which the court avowedly decided the case; and when, moreover, we regard the mortgage, as we must in the absence of any thing that appears in the case to the contrary, as a valid chattel mortgage, this reasoning is not necessary to sustain the case. It rests upon sound reasons independent of those alluded to.

The case of *Mitchell* v. *Hinslow*, (2 *Story's Rep.* 630,) upon the authority of which *Coe* v. *Hart* was decided, presented the question whether a mortgage of personal property, to be acquired after the execution of the mortgage, constituted such a lien in favor of the mortgagee, upon such subsequently acquired property, as was protected by the provisions of the 2d section of the general bankrupt law of the United States. The question arose between the mortgagee and the assignee of the bankrupt mortgagor. Mr. Justice Story held that the mortgage attached in equity as a lien or charge upon the particular property, as soon as the mortgagor acquired a title, as against him and all persons claiming under him, either voluntarily or with notice or in bankruptcy.

The case of *Corey* v. *The Pittsburgh, Fort Wayne and Chicago Rail Road Company*, a newspaper report of which has been furnished to us, presented a similar question to that decided in *Coe* v. *Hart*. An execution creditor had levied upon certain rails that had been temporarily removed from their place in the road bed for repairs, and upon a small quantity of iron chairs which were placed on the road and were intended for use there, but had never been affixed to the road bed. The president of the company, on its behalf and on behalf of the mortgagees, in a mortgage similar to the plaintiffs' mortgage in this case, moved to set aside the levy. As to the rails the case admitted of no doubt; they had been permanently affixed to the realty, and their removal for the purpose of necessary repairs did not deprive them of their character of fixtures, and the court so held. The court further held that the mortgage was valid as a chattel mortgage, under the statute of frauds, as against creditors, and cited the case of *Coe* v.

*Hart* and several elementary authorities, to show that in equity such a mortgage, if sufficiently comprehensive in its terms, (as the mortgage in that case was,) would create a lien upon the future acquisitions of the mortgagor. These propositions disposed of the case, and the decision of the learned judge upon the question, whether the law upon principles of public policy and convenience would, as between the company and a creditor, protect the property which was necessary to the operation of the road from levy and sale on execution, is entirely *obiter*. The mortgagees, it will be remembered, were represented and their rights considered and determined on the motion, and if their title was superior to the rights of the creditors, the executions must necessarily have been set aside. The consideration, therefore, of the company's right independent of the mortgages, to prevent a levy and sale on execution, which right the learned judge rested upon the argument just alluded to, was wholly unnecessary to the disposition of any question involved in the case, except possibly a question of costs; and no such question appears to have been considered by the court.

The cases prove no such proposition as that now under consideration. Indeed it is nowhere affirmed or intimated that property of the kind, or situated like that in controversy in this action, is real estate. On the contrary the learned judge, who delivered the opinion in the case last cited, assumes that the rolling stock of a rail road is "personalty by nature," and puts its exemption from sale on execution, not on the ground that its nature is changed by placing it on the road, but on the ground of its necessity to the operation of the road. This is substantially the view which Justice McLean takes of the question, in *Coe* v. *Hart*. The question will be considered in this aspect hereafter. The case of *Seymour* v. *The Canandaigua and Niagara Falls R. R. Co.* (25 *Barb.* 284) involved a question as to the lien of the mortgage upon *lands* acquired by the company subsequent to the execution of the mortgage; and Mr. Justice Smith, at special term, held that the lien at-

tached in equity, upon the acquisition of the lands; on the
principles laid down by Justice Story in *Mitchell v. Hinslow*.

The case of *The Farmers' Loan and Trust Co.* v. *Hendrickson* (25 *Barb*. 484) is directly in point and in favor of
the plaintiff's position. It is a decision of a general term of
this court upon a case submitted · by the parties without action. The case does not show what points were presented by
counsel, or how elaborately the merits were argued. But the
opinion delivered by Mr. Justice Strong shows that the case
was thoroughly considered by him. And as the decision was
concurred in by his associates, it should be received with the
same respect here, as a decision made by us, and should not
be overruled, except under the same circumstances that would
induce us to review and overrule our own decision. That this
should rarely be done, and that when done, it should be upon
mature deliberation and for cogent reasons only, I concede.
But that cases will occur when justice to parties interested
and to the law requires it, the experience of all courts proves.

The controversy in that case arose between the plaintiff as
the mortgagee in trust for the bondholders, to secure whom
the two mortgages to the plaintiff were executed, and certain
judgment creditors whose executions had been levied upon the
rolling stock of the Flushing Rail Road Company, the mortgagor. The mortgages under which the plaintiff claimed
were substantially like that under consideration here, the
cars, engines, tools and machinery being mortgaged. The
question whether future acquisitions of personal property
would be included in such a mortgage did not arise, because
one of the plaintiffs' mortgages was executed after all the
property was acquired and before the levy under the executions was made. It was conceded also, that the plaintiffs
could not hold the property as personal property under the
mortgages, for the reason that they had not been filed as chattel mortgages. The learned judge who delivered the opinion
came to the conclusion that the rolling stock was fixtures and
passed as necessary incidents in a conveyance of real estate.

It will be apparent, on a careful reading of the opinion, that the fact of the necessity of the rolling stock to the employment of the road exercised a great, and I think it fair to say, a controlling influence upon the decision. Indeed I think, upon a careful examination, it will be found that every other circumstance alluded to by the learned justice as a distinguishing feature between personal property and fixtures, exists rather in imagination than in fact. The learned justice cites several cases in which a very slight, and perhaps it is more correct to say a purely constructive annexation of personal property to the freehold, has been held to give such property the character of fixtures, and where the circumstance of the necessity of the chattels to the enjoyment of the freehold has apparently had great weight in determining its character; and compares these cases, so far as this feature is concerned, with that under consideration, and comes to the conclusion — a fair one I concede — that the argument, founded upon necessity, applies with greater power to the case of a rail road than to most of the cases cited by him. But evidently foreseeing the logical consequences of this reasoning, and the practical results of the application of the rule, the learned judge proceeds to compare this species of property to farming implements and mechanics' tools, and then points out what he regards as the difference between the cases. "It is true that no mechanical or agricultural business can be carried on to any extent without tools or farming implements, and such tools and implements are universally conceded to be personal property; but then such tools or implements are not peculiarly adapted or confined to any particular establishment, but may be used upon them generally, and are subjects of frequent barter." Now I respectfully submit that each of the supposed differences here specified will, upon an appeal to facts, be found wanting in substance. As was remarked by Judge Denio, in the case of *Bishop* v. *Bishop*, (1 *Kern.* 126,) "we are allowed to know, judicially, what every person out of the court knows," that the engines, cars and other rolling

stock on rail roads are, in their nature, no more peculiarly adapted, nor in point of fact confined to any particular establishment or road, than farming implements or mechanical tools are to particular farms or workshops. True, there is a difference in the width of roads requiring a corresponding difference in the width of cars, as there is a difference in the surface and soil of farming lands, requiring a corresponding adaptation to them of implements and machinery used in agricultural operations. It is a well known matter of fact, moreover, that the rolling stock of rail roads is often run and used habitually on other roads, hundreds of miles distant from the road to which such stock belongs, and into different states from that in which the road is located. It not only may be there, but it is in fact used 'generally' upon rail roads without regard to the particular road to which it belongs. This practice is so common, when roads of the same width connect, as to authorize me to refer to it as a fact of general notoriety. That this species of property is a subject of frequent and extensive commerce or 'barter,' I need hardly say. In this respect I confess I can see no difference between it and the other kinds of property referred to by the learned justice, none certainly that seems to justify the attempted distinction. As I have remarked in another place, this property is constantly being manufactured to supply the constantly existing and increasing demand. It is sold as an article of commerce, by the manufacturer, to rail road companies for their use, and not unfrequently made a subject of bargain and sale between different companies. The learned justice, after quoting, with approbation, the remark of Justice Weston in *Farrar v. Stackpole,* (6 *Greenl.* 154,) that the general principles of law should be applied to new kinds of property as they spring into existence, according to their nature and incidents and the common sense of the community, admits that this property, if submitted to that test, would hardly be determined to be fixtures, and remarks that the movable quality of rail road cars has frequently, if not generally, induced the opinion that they

are personal property. The learned justice also admits that but for the supposed peculiarities of this property above referred to, and the fact that cars and engines were a necessary part of the entire establishment comprising a rail road, he would be "compelled by the weight of authority to decide that as they are not physically annexed to what is usually denominated real estate, they must be deemed personal property." This concession as to the state of the authorities renders it unnecessary for me to enter upon an analysis of the cases, in detail; I shall do no more than refer to the general definition of fixtures and the distinguishing characteristics by which the difference between them and personal property is determined, as stated by the late Justice Cowen, in the leading case of *Walker* v. *Sherman*, (20 *Wend.* 636.) The general rule laid down in that case by the learned judge after an exhausting and unusually critical examination of the authorities, is this: "In order to come within the operation of a deed conveying the freehold, whether by metes and bounds of a lot &c., or in terms denoting a mill or factory &c., nothing in a nature personal in itself will pass *unless it be brought within the denomination of a fixture by being in some way permanently, at least habitually, attached to the land or some building upon it,*" (*page* 655.) At page 653 the learned judge, speaking of the distinction between personal property and fixtures; says, "the ancient distinctions, however, between actual *annexation* and total *disconnection* is the most certain and practical; and should therefore be maintained, except where plain authority or usage has created exceptions." The learned judge, speaking of the reasoning of Mr. Justice Weston, heretofore quoted, in *Farrar* v. *Stackpole*, while he disapproves of the case, approbates a liberal application of that reasoning to modern machinery *in subordination to the rule* laid down in the principal case. This case has stood unquestioned for twenty years, as the law of this state. The plain, practical and wise rule laid down by Justice Cowen has been uniformly received as authority and

cited with almost unanimous approbation in every case that has arisen since that time—and while it may be questionable whether it has always been correctly applied, there is no question that its soundness has always been recognized by our courts, and that it has been professedly applied by them. If there have been departures from it in particular cases, those cases, instead of tempting us further astray, should admonish us of the necessity of adhering more rigidly to it, as each succeeding departure, each additional exception, furnishes a new illustration of the value of the simplicity and certainty of the rule. Such then is the settled general rule of law in relation to fixtures.

It is virtually conceded by the learned judge whose opinion has been so often referred to, that this kind of rail road property does not come within the general definition of fixtures; that is, that it is not annexed or attached to the freehold, as the general rule on that subject requires it to be. If this is true of such property in general it is peculiarly so of the property in controversy. This road connects at its eastern terminus with the New York and Erie Rail Road, which runs thence to the city of New York, passing in its route through the states of Pennsylvania and New Jersey. We are informed by the plaintiffs' case that some of the cars in question have been run from Hornellsville to New York over the New York and Erie Rail Road, in the transaction of business. It is fair to infer, from the statement in the case and the well known course of business in such cases, that these cars have been uniformly used in this manner; that many, and possibly all of them, have been not only off from the road where they were owned, but out of the state where that road is located, and in the temporary possession and control of other companies, and that they are continually used in this manner. The statement of these facts, in connection with the proposition sought to be sustained by them, that these cars are so annexed to the road as to be a part of the realty, is in my judgment the most conclusive argument with which the proposition can be combated.

The next question is, do these cars come within any of the exceptions which *"plain authority or usage"* has created? It has already been seen that the whole argument in favor of holding them to be fixtures rests upon two assumed facts, to wit: Their peculiar and exclusive adaptation and indispensable necessity to the operation of the road. I have endeavored to show that the first assumption is unfounded in fact, and I think it is apparent that the other is equally so. *Some* cars, it is true, are essential to the operation of a rail road. *But these particular cars* are no more necessary for that purpose than others of the same construction, which might be obtained to supply their places. The same means that put those cars on the road would procure others to take their places if they should be removed. To sell the rolling stock of a rail road would no more be a destruction of the road, in legal contemplation, than the sale of a farmer's teams, stock and farming utensils would be a destruction of his farm. In either case there may be a necessity of keeping the personal property, arising out of the pecuniary inability of the owner to replace it, and thus make the use of the other property, to which the personalty was essential, profitable. But the law regards no such necessity as this, for any purpose; certainly not for the purpose of enabling a debtor to retain his property for his own emolument, and set his creditors, or any class of them, at defiance. But this doctrine of constructive fixtures, founded upon the adaptation and necessity of personal property to the use of the realty, was expressly repudiated in *Walker* v. *Sherman.* The learned judge who delivered the opinion, in commenting upon the opinion of Justice Weston before quoted, said, "It does not appear to be sustained by authority when it seeks to raise a general doctrine of constructive fixtures from the moral adaptation of what is in fact a mere movable, to carrying on a farm or factory, &c. *however essential* the movable may be for that purpose."

The facts of the case then before the court presented that precise case for adjudication. It was apparent from the case,

 
and conceded in the opinion, that the machines then in question were essential to the business of the factory from which they were removed. But this fact was not allowed to control the case, in the absence of the one indispensable requisite of a fixture, to wit, physical annexation of some sort to the freehold. It is not to be denied that there are many cases in which these facts of adaptation and necessity have had a great and, in some exceptional cases, a controlling influence; and it is conceded by Justice Cowen, that in cases where these considerations apply with peculiar force, a slight annexation or connection with the freehold will be sufficient. But such a connection, and that (though slight) permanent or habitual and general must exist in order to constitute personal property a fixture. As Justice Cowen well remarks, "the argument in favor of the doctrine of constructive fixtures founded upon such considerations as are now urged proves too much. Such adaptation and necessity might be extended even to the use of domestic animals on a farm, and certainly to many implements in a manufactory which could never be recognized as fixtures without utterly confounding the rule by which the rights of the heir and purchasers have long been governed." The learned counsel for the plaintiff, with a clear and accurate appreciation of the consequences of the doctrine for which he contended, claimed in his complaint the shop-tools and implements used by the company for mechanical purposes in the repair of its engines and cars, which are mortgaged as such, *eo nomine*. Articles, in the language just quoted, which could "never be recognized as fixtures." And I can explain his omission to claim the wood and coal stored by the company at its various stations, upon no other hypothesis than that the necessities of the company, which constitute the foundation of the argument, are so great in that direction as to offer no temptation to the vigilance of the mortgagees. It may be said that this is an extreme case, but extreme cases which are natural and probable results of the application of general principles afford fair illustrations of such principles, and cor-

Stevens *v.* Buffalo and New York City R. R. Co.

rect tests of their soundness. The argument in favor of the position that engines and rail road cars are fixtures applies with equal force to fuel, and indeed to every thing else necessary to the effective operation of a rail road. Engines and cars without fuel would be as useless as the road bed and superstructure would be without engines and cars. And if for the reasons now urged, the latter are to be regarded as fixtures, why not the former ? Many reasons given why cars are fixtures are more applicable to fuel than to cars, for that is always kept and consumed on the road, while the cars are frequently used elsewhere. I will refer briefly to some of the questions that must necessarily arise in the practical application of this novel doctrine. Suppose cars used on rail roads in this state to be judicially declared fixtures. In the course of their daily use, as appears in this case, they are run into adjoining states ; what are they while there ? If our law differs from theirs on this subject, which law is to govern ? Is the general rule that the *lex rei sitæ* is to govern in all cases relating to the acquisition and transfer of the title to real estate, to follow and protect this property in another state ? Or, if the laws of the other states through which these cars run agree with ours as to the character of such property when used on the road where it is owned, how will it be treated when it leaves that road and goes beyond the jurisdiction of the state where the road is located ? It would be singular indeed, if property which was daily being moved from one state to another should be held to retain, through all its changes of location, the character of real estate ; and more singular still if it should be held to alternate in its character from day to day, being real estate one day and personal property the next—its character depending upon the accident of location at any given time. This would be an unheard of anomaly in the law. Again ; suppose a judgment to be recovered and docketed in one of the counties through which the road runs. Does the judgment, by virtue of such docketing, become a lien upon all the cars that may thereafter be run through or into that coun-

ty ? . And may they be sold thereafter wherever they may be, without any manual seizure by the sheriff ? These and innumerable other questions that might be suggested illustrate the utter inapplicability of the law of fixtures to such property.

. . The cases on the subject of the law of fixtures are not a little conflicting, and in consequence of this conflict in cases, and the numerous and anomalous exceptions to its general rules that have been established, it is often very difficult to discriminate between personal property and fixtures. But we shall greatly increase that difficulty if we do not entirely obliterate the distinction between the two kinds of property by multiplying exceptions. I think we are called upon in this case to take about the last step that remains to be taken towards the accomplishment of that result. I agree to the rule laid down in *Farrar* v. *Stackpole*, that the principles of the law should be applied to new kinds of property in such a manner as the nature and incidents of the property and the peculiar necessities under which the application is to be made, may require. But I can see no necessity in this case, nor any thing in the character or incidents of the property requiring or justifying the application to it of a rule different from that which is applicable to all other property. It has been suggested in several of the cases cited, and it is undoubtedly true, that the mortgagees lent their money upon the security of all the property of the road. It is equally true that the mortgage was originally a valid lien upon all the property owned by the company at the time of its execution ; that that lien has attached upon all the real property acquired since and comprehended by the description in the mortgage. As to the personal property, the lien could have been perpetuated upon such property as the company then owned, by filing the mortgage as a chattel mortgage, in pursuance of the requirements of the statute on that subject; and if the mortgage did not attach, *proprio vigore*, to subsequently acquired personal property, the covenants contained in it created an obligation on the part of the company, which equity would have enforced, to execute the

Stevens *v.* Buffalo and New York City R. R. Co.

necessary conveyances to transfer a good title to such property as fast as it was acquired. By due attention to their interests on the part of the mortgagees, and a compliance with the rules and requirements of the law, they would have obtained and kept intact all the security upon which they can be supposed to have invested their funds. If they have disregarded the law and neglected the precautions which it requires of them, it is not only wiser but more just that they should be subjected to the consequence of their own neglect, than that the law be changed or perverted by forced construction, for their relief.

The argument that rail road corporations are created to serve the public, and that the public has such an interest in their maintenance and operation that the law will not, upon principles of public policy, permit a separation of the rolling stock from the road by means of a sale on execution, admits in my opinion of a very brief answer. The franchise granted to a rail road company, to construct and operate a rail road, is undoubtedly accompanied with an implied obligation on the part of the company to construct and operate such road, and for a failure to fulfill this obligation the franchise may be forfeited and the grant may be annulled by the legislature. But that the law will permit the company to hold property for its own private emolument which the labor and money of creditors has contributed to furnish, in defiance of those very creditors, on the ground that the public is interested in the success of the company and the continuance of its operation, is a novel and to me a startling proposition. Private property may be taken for public use on making adequate compensation to the owner. This prerogative of sovereignty has been in many cases delegated to corporations, on the idea that the enterprises for the promotion of which they were incorporated, were of a public nature and for the public benefit. But the idea that such corporations may acquire and retain property without compensation, and without such property being amenable to the ordinary process of the law, is one for which I think no

countenance can be found in legal principle or well considered authority.

The rolling stock, shop-tools and machinery not affixed to the realty, being personal property, and the plaintiff's mortgage not having been filed as a chattel mortgage, it is void as against creditors, as a conveyance of personal property. The referee, therefore, decided correctly in holding that the plaintiffs were not entitled to a judgment for the sale of the rolling stock, &c. acquired subsequent to the execution of the mortgage. But I am not able to concur with him in his decision that the plaintiffs were entitled to a judgment for the sale of the rolling stock and other personal property on hand when the mortgage was executed. The mortgage of the plaintiff, so far as that property is concerned, must be sustained as a chattel mortgage, if at all. As such, it was void as against the defendant Patchin, for the reason that it was not filed in pursuance of the provisions of the statute. There would have been no question about this if the judgment creditor had been any one else than an officer of the road. But I understand that the referee put his decision upon the ground that as Patchin was at the time the mortgage was executed and negotiated, a director and the chief financial officer of the road, and as such negotiated the mortgage, he is estopped from questioning its validity as a mortgage upon all the property, real and personal, that the company then owned. With great deference to the opinion of the learned referee, I am not able to concur with him in this conclusion. An estoppel of this kind consists in the representation of some matter *in pais* (a mere matter of fact as distinguished from a legal conclusion) known to the party making the assertion, but unknown to the party to whom it is made, to be untrue, and made for the purpose of influencing the action of such party. Where such a representation has been made and has induced the party to whom it was made to act upon it in such a way that he will be injured if it is untrue, the party making the representation will be estopped from controverting its truth. Now

what representation did Patchin make when he negotiated this mortgage ? The case discloses none. But it may be said that he must be held to have represented as true what the mortgage purported on its face, so far as the property then owned was concerned—and in this aspect of the case we need consider it with reference to no other—this representation, if his acts are to be so construed, was true. The mortgage was perfectly valid as to that property, and the plaintiffs acquired all the title to it that any mortgagee of chattels ever does. But this is not the proposition that Patchin now denies. What he alleges now is that the mortgage, by reason of the neglect of the plaintiffs to file it, has become void as against subsequently acquired rights as a judgment creditor. No collusion between him and the other officers of the company, in recovering his judgment, is alleged, and I take it the mere fact of his being an officer of the company does not preclude him from recovering a judgment against it for a bona fide debt. Is he then, conceding that he would have been estopped from denying the original validity of the mortgage, estopped from asserting the superiority of his subsequently acquired rights over the mortgage, which rights have accrued in consequence of the subsequent neglect of the mortgagee ? I think not. On the contrary, I think he occupies the same position of any other judgment creditor. All that can be alleged against him in consequence of his agency in making and negotiating this mortgage is, that he had notice of it at the time he recovered his judgment. But notice to a judgment creditor, of an existing mortgage, is no answer to his objection that the mortgage has not been filed.

On the ground last stated I think the plaintiffs' appeal should be dismissed with costs, and the judgment should be modified on the appeal of the defendant Patchin, by striking out so much as directs the sale of the engines, tenders, cars, shop-tools, and other personal property therein directed to be sold, and affirmed as to the residue, with costs.

GROVER, J. It appeared on the trial that at the time of the execution of the mortgage, the rail road company owned several locomotives, and passenger and other cars, all of which the referee decided were bound by the mortgage; and he directed judgment for the sale thereof, with the other property embraced in the mortgage. It was further shown that after the mortgage was given to the plaintiff Stevens, the company became the owner of other engines and cars, which they had used upon the road, between Buffalo and Hornellsville, and the plaintiffs claimed that these were subject to the mortgage, and should be adjudged to be sold with the other property. The referee decided that they were not subject to the mortgage, to which the plaintiffs excepted, and their appeal is founded solely upon this exception. The following facts were shown upon the trial: That after the mortgage was given to the plaintiff Stevens, and before the commencement of the suit, the defendant Patchin recovered a judgment in this court against the rail road company, and executions were issued upon the judgment, and levied upon all the engines, cars, &c. in question, as personal property, and that the same were sold upon said executions, by the sheriffs of Erie, Wyoming and other counties, wherever. the same were found, and that the defendant Patchin became the purchaser at such sales. The plaintiff's mortgage had never been filed as a chattel mortgage. If the engines and cars are personal property, then Patchin acquired a good title to them by his purchase upon the execution. If they are fixtures, then Patchin acquired no title by his purchase; and the inquiry would be, to what portion of the road these engines and cars pertained as fixtures. The road extended from Hornellsville to Buffalo. The plaintiff's mortgage only covered the road from Attica to Buffalo, almost one third of the entire road. The questions arising in various forms, between the owners of the realty claiming property as fixtures, and those claiming the same property as personal, have been very numerous. The books abound in cases, and yet after the lapse of centuries no certain rule has been

established the application of which to a case like this would remove all doubt. In the early history of the common law, the question usually arose between the personal representatives and the heir ; and in such cases a rule favorable to the inheritance was applied. In questions between landlord and tenant, the rule was relaxed in favor of the tenant, particularly when trade or manufactures were concerned In questions between vendor and vendee, and mortgagor and mortgagee, the same rule prevailed as between the heir and personal representatives. In *Walker* v. *Sherman,* (20 *Wend.* 636,) the cases are very thoroughly and extensively examined by Mr. Justice Cowen. He arrives at the conclusion, as a general rule, that in order to come within the operation of a deed conveying the freehold, nothing of a nature personal in itself will pass, unless it be brought within the denomination of a fixture, by being in some way permanently, at least habitually, attached to the land or some building upon it ; it need not be constantly fastened ; it need not be so fixed that detaching would disturb the earth, or rend any part of the building. In the case of *Bishop* v. *Bishop,* (1 *Kernan,* 123,) the court of appeals decided that hop poles which had been taken down to gather the hops, and piled in the yard, with the intention of replacing them the next season, were a part of the real estate ; and the reason assigned was, that the poles were to be permanently used upon the land, and were necessary for its proper improvement. I apprehend, in this case, it was not intended that every thing necessary for the proper improvement of the land became real estate. Such a rule would convert into real estate a vast amount of property, universally held to be personal. It has been held that stoves used in a house; not attached to the building, were personal property, although there was no other means of warming the house. The house would be worthless, deprived of all means of artificial warmth. A farm cannot be properly cultivated without a team and farming implements ; yet it has never been supposed that a team and implements would pass by a conveyance of the farm, to-

gether with the rents, issues and profits thereof. But title could be acquired to a farm destitute of these articles, as well as to a rail road without engines, cars, &c. I apprehend a rule that all shall pass by a grant, without which, or a substitute for it, the subject of the grant cannot be advantageously improved, is not sound. It would embrace the furniture of houses, as well as articles used upon land. *The Farmers' Loan and Trust Company* v. *Hendrickson*, (25 *Barb.* 484,) expressly decides that engines and cars are fixtures. Mr. Justice Strong, in an able opinion, places the decision upon the following grounds : that the wheels are fitted to the rails ; that they are used almost exclusively upon the road, and cannot be used elsewhere ; that they are not articles of commerce ; that the road cannot be used without them. As to the first reason, it may be said, that the engines and cars of the New York and Erie Rail Road may be, and many of them often are, used upon the roads of other companies, having connection with that road ; having the same gauge and kind of rail. Before the act providing for the consolidation of several rail road companies into the New York Central Rail Road, the engines and cars of any one of those several companies were suitable, and frequently used, on the entire route from Albany to Buffalo. This shows that engines and cars upon rail roads cannot be regarded as fixtures because they are adapted to use upon the particular road of the company owning them, and not elsewhere. I do not think much force can be attached to the argument that they are not articles of commerce. How the fact may be, I am unable to state, but I think the engines and cars of rail road companies are sold as often as farmers sell or exchange their plows. Plows are procured for use upon a farm, and are very rarely sold and exchanged, unless the farmer ceases himself to cultivate the farm. Should a rail road company at any time have a surplus of engines or cars, I think a ready market would be found for them upon roads similarly constructed. Engines and cars are not attached to the road in any manner save by

their weight; they are not kept in any permanent place; they are run hundreds of miles, passing through different counties and sometimes states. It is well known that the cars of the defendants frequently run upon the New York and Erie Rail Road, to the city of New York, and sometimes the engines and cars of the latter company run upon the defendants' road to Buffalo. When the engines of the New York and Erie Rail Road are on the track of defendants' road, are they the real estate of the latter road; are they subject to mortgages upon the defendants' road, and to the liens of judgments against the company? If they are fixtures, I do not see why they would not be. Suppose a party recovers judgment against the New York and Erie Rail Road and dockets it in Allegany county, issues execution to the sheriff of that county, and sells the real estate of the company situate therein, what engines and cars will the purchaser hold by virtue of the sheriff's sale? About one eighth of this road is within the county of Allegany; how are those fixtures to be divided between the purchaser and the owners of the residue of the road? Are they to be partitioned according to the length of the whole road, or the value of the different portions? Again; suppose the cars are, just at the expiration of the time for redemption, placed upon that portion of the road situate in the state of Pennsylvania; they are still fixtures, just as much attached to the road as ever. How is the purchaser to proceed? He goes to Pennsylvania claiming the cars as real estate; they are still upon the track of the company; he interposes his claim to them by virtue of his purchase of the track of the company in the county of Allegany, and claims them as fixtures upon the track. But they are just as much fixtures where they are; no one has detached the cars from the track. The company ran the cars just where they had a perfect right to run them; they were from the time of the recovery of the judgment, and still are fixtures. I can hardly believe a proceeding for partition would be sustained; how then is a judgment to be collected out of the engines and cars

of a rail road company ?   Again ; the statute provides that the real estate of corporations shall be assessed in the town or ward where the same is situated.   In what town or ward are the engines and cars of the New York and Erie, or the New York Central Rail Road Company, to be assessed ?   They are fixtures just as much in one town as another.   Suppose they are assessed in each town and ward through which the track extends ; what remedy has the company ?   I know of none.   I believe no attempt has ever yet been made to assess engines and cars as real estate.   The leading idea of a fixture is that it is something affixed to land, or to buildings upon the land ; something fixed and permanent in its location, or a mere incident to something so fixed.   There are exceptions to this rule, some of which have no principle to support them. Upon what principle are deer in a park held to pass by a conveyance of the realty, while cows in a pasture do not ; pigeons in a dove cot to pass, while hens in a barn do not ?   I can see none, except the greater difficulty of removal in the one case, more than in the other.   From these cases no general principle can be deduced.   A key to a lock in a door passes with the realty ; the lock is attached, and the key is held to go with it.   The lock is a fixture to the house, not to the farm ; so that if the house is conveyed, the key passes with that.   I believe no case can be found where real estate has been conveyed by the owner to different persons in severalty. The grantees have been held to be tenants in common of fixtures situate perhaps hundreds of miles from the lands of either.   It is true that rail road corporations will have greater facilities for borrowing upon mortgages of their real estate by holding that their engines and cars are fixtures and subject to liens ; but I am not aware of any particular necessity for changing rules of law for such a purpose.   Government, corporations and individuals appear to have been tolerably successful in borrowing money under existing rules.

In my opinion, engines, cars, &c. are not fixtures, but personal property ; and the defendant Patchin acquired a title

to them by his purchase under the execution against the rail road company. The referee was correct in deciding that the engines and cars were not liable to be sold upon the mortgage.

If I am right in this conclusion, then Patchin acquired a perfect title to the property, by his purchase upon the execution. The engines and cars were his, discharged of the lien of the mortgage. That never having been filed as a chattel mortgage, it is void as to judgment creditors, so far as relates to personal property.

The appeal of the plaintiffs should be dismissed, and the judgment modified by omitting the engines and cars from the decree of sale.

MARVIN, J. concurred.

Judgment accordingly.

[ORLEANS GENERAL TERM, September 13, 1858. *Marvin, Greene* and *Grover*, Justices.]