CHICAGO & NORTHWESTERN RAILWAY CO. *v.* ELLSON.

1. RAILROAD COMPANIES—TAXATION—CONSTRUCTION OF STATUTES.
   Section 47 of Act No. 206, Pub. Acts 1893, as amended by Act No. 229, Pub. Acts 1895, provides: "If any person shall neglect to pay any tax assessed to him, the township treasurer shall collect the same by seizing the personal property of such person, * * * from which seizure no property shall be exempt." 1 How. Stat. § 2, subd. 12, provides that, in the construction of statutes, the word "persons" may extend and be applied to corporate bodies. *Held,* that the seizure and sale of the personal property of a railroad company to satisfy a tax assessed against its lands is thereby expressly authorized.

2. SAME—FUEL—WHEN SUBJECT TO LEVY.
   Coal belonging to a railroad company, and stored in its sheds, designed for, but not in actual use in, the peration of its locomotives, is personal property, subject to levy and sale under a tax warrant.

Appeal from Marquette; Stone, J. Submitted April 13, 1897. Decided May 25, 1897.

Bill by the Chicago & Northwestern Railway Company against William J. Ellson, treasurer of Onota township, Alger county, to restrain the sale of a quantity of coal under a tax warrant. From a decree dismissing the bill on demurrer, complainant appeals. Affirmed.

*R. C. Flannigan*, for complainant.

*M. J. Sherwood*, for defendant.

LONG, C. J.    This bill is filed to restrain the defendant, who is township treasurer of the township of Onota, Alger county, from selling a quantity of coal for a tax assessed upon certain lands of complainant.    It appears by the bill that the complainant is a railroad corporation, operating a line of road for the transportation of persons and property and the mails of the United States, extending through the States of Michigan and Wisconsin to the city of Chicago, and through or into three other States. It is the owner of a quantity of lands situate in the township of Onota, Alger county.    These lands were granted to the complainant company to aid in the construction of a portion of its road in Michigan, and are owned and held by the complainant in its private capacity, are not used or necessary for use in the operation of the road, and are subject to taxation.    The taxes for the year 1896 upon these lands were not paid, and the defendant, by virtue of a tax warrant issued thereon, seized about 1,500 tons of coal belonging to and situate in coal sheds of complainant at the city of Ishpeming, county of Marquette, and advertised the same for sale, to satisfy the tax assessed upon the lands.    It is admitted by the bill that all the proceedings for the assessment of the tax, and the proceedings of the treasurer to collect the same in the county of Marquette as a personal claim against the complainant, were regularly and legally taken; but the bill alleges that the coal levied upon was necessarily used, and was necessary for use, in the due and proper operation of the road, in the transportation of passengers and freight, and the carriage of mails, to the full performance of the duty which the complainant owed to the public as a common carrier, and to the exercise of its franchise to operate the road; that the necessities of the business of the public, both domestic and interstate, required that there be no interference with or interruption of the operations of the road

that, unless the complainant could continuously use the coal, its business of transportation and carriage of the mails would be seriously interrupted, and the running of trains disarranged and confused, and the complainant greatly damaged thereby. The complainant nowhere alleges its inability to pay the tax, or sets out any grounds upon which illegality in the tax levied against its lands is alleged, but bases its whole reason for asking the interference of a court of equity to restrain defendant from enforcing the payment of the tax on the ground that the property in question is exempt from distress and sale under the tax warrant. To this bill the defendant interposed a demurrer, which, upon the hearing below, was sustained, and the bill dismissed. The complainant appeals.

The question is presented whether the purely personal property of a railroad corporation occupies a different position under the tax laws of this State from the personal property owned by an individual, and therefore whether the coal seized by the defendant is subject to seizure under his tax warrant. Counsel for complainant contends that there is no statute expressly authorizing the seizure and sale of the personal property of a railroad corporation to pay the tax due the State; that it is a question of public policy in respect to which the sovereign power alone is authorized to deal; that it is not within the province of the courts, and they are not entitled, to specify what provision should have been made to further the collection from corporations of this character of private debts or public dues, and then to adjudicate as if the same had been made, but rather to ascertain whether the State, by unequivocal declaration of its legislature, has made provision for the collection.

We are satisfied that there is sufficient authority found within the tax laws to warrant the action of the defendant in seizing and selling this coal under his warrant. Section 47, Act No. 206, Pub. Acts 1893, as amended by Act No. 229, Pub. Acts 1895, provides:

· " If any person shall neglect or refuse to pay any tax assessed to him, the township or city treasurer, as the case may be, shall collect the same by seizing the personal property of such person to an amount sufficient to pay such tax, fees, and charges for subsequent sale, wherever the same may be found in the county in which such treasurer resides, or in an adjoining county thereto, and, in case of assessment upon the personal property of corporations organized under the laws of this State for the purpose of engaging in maritime commerce and navigation, wherever personal property of such corporation may be found within the State; and from which seizure no property shall be exempt.   He may sell the property seized to an amount sufficient to pay the taxes and all charges in the place where seized," etc.

The word "person," as used in this statute, must be applied to bodies corporate and politic, as well as to individuals, under subdivision 12, § 2, 1 How. Stat.

Counsel for complainant contends that this provision of the tax law means that no property of an individual shall be exempt, and that it does not cover the property of railroad corporations, as it does not specifically designate them.   He bases his contention that this property cannot be taken on the ground that the rule of public policy forbids, and that the property of a railroad is an entirety, and, since a portion is not liable to seizure under execution or on a tax warrant, all of it is alike exempt, and that the complainant owes certain other duties to the public, and may be forced to perform them.

In the case of *Lake Shore, etc., R. Co.* v. *City of Grand Rapids*, 102 Mich. 374, the bill was filed for the purpose of vacating a local assessment upon the railway company's property, on the ground that the complainant was not liable to assessment for municipal street improvements, and to enjoin the mayor from executing a deed on a sale of the premises, which was a portion of the right of way, the roadbed of complainant's road, including a freight house on such right of way.   While it was held that this property could not be sold under the provisions

113 MICH.—3.

of the city charter for the nonpayment of local assessments, yet the assessment was held valid. The city contended in that case that the tax might be collected from the personal property of the complainant, under the amendment of 1893 to the charter. It was said in that case:

"If there were a general clause in the charter authorizing the collection from the personal property of the corporation, we could see no difficulty in enforcing the collection, as we are of the opinion that, though the lands and premises assessed cannot be sold for the tax for the reason stated, yet the assessment for the local improvement is valid."

In *Hackley* v. *Mack*, 60 Mich. 604, the sheriff was acting under a warrant from the auditor general. It was said:

"We have no law that we have yet discovered, and certainly none has been pointed out to us, which authorizes the sheriff to levy upon the track or roadbed of a railway, even against the corporation. If any levy can be made upon the property of the company aside from such goods and chattels as may be found, seized, and taken into custody by the sheriff, it is only on the franchise of earning tolls, as provided by the corporation laws."

Freeman, in his work on Executions (2d Ed., § 179), speaking of the rule laid down in *Plymouth R. Co.* v. *Colwell*, 39 Pa. St. 337 (80 Am. Dec. 526), says:

" A railroad company can no more discharge its public duties without locomotives and passenger and freight cars than it can without a franchise, a track, or a depot; and yet the existence of these great corporations, with all the property, real and personal, essential or at least highly beneficial to their successful operation, entirely exempt from execution at law, would be insufferable. So comprehensive an exemption will not now be sustained. So far as any general rule can be formulated upon the subject, it is this: That property of a corporation is not subject to execution which is not subject to voluntary transfer by the corporation. The mere right or franchise to be a corporation is never, in the absence of special statutory authority, subject to sale, whether voluntary or under execution."

The rule laid down in *Louisville, etc., R. Co.* v. *Boney*, 117 Ind. 501, was that while the franchise and privileges of a railroad company, its lands, easements, and things essential to the existence of the corporation, or necessary to the enjoyment of its franchise, could not be sold on execution to satisfy a judgment at law against it, yet the locomotives, cars, and other personal property could be when not in actual use.

In *Stevens* v. *Railroad Co.*, 31 Barb. 590, the court, in speaking of locomotives, cars, tools, machinery, etc., of the company, said:

"The property in question, then, is either personal or real property. It must, in the nature of things, be one or the other. It cannot be both, nor can it for any legal purpose be said to partake of the nature of both. * * * It has always heretofore been treated as personal property, liable to seizure and sale on execution. * * * To sell the rolling stock of a railroad would no more be a destruction of the road in legal contemplation than the sale of a farmer's teams, stock, and farming utensils would be a destruction of his farm. In either case there may be a necessity of keeping the personal property, arising out of the pecuniary inability of the owner to replace it, and thus make the use of the other property, to which the personalty was essential, profitable. But the law regards no such necessity as this for any purpose; certainly not for the purpose of enabling a debtor to retain his property for his own emolument, and set his creditors, or any class of them, at defiance. * * * The franchise granted to a railroad company to construct and operate a railroad is undoubtedly accompanied with an implied obligation on the part of the company to construct and operate such road, and, for a failure to fulfill this obligation, the franchise may be forfeited, and the grant may be annulled by the legislature. But that the law will permit the company to hold property for its own private emolument which the labor and money of creditors nas contributed to furnish, * * * on the ground that the public is interested in the success of the company and the continuance of its operation, is a novel and, to me, a startling proposition."

In *Randall* v. *Elwell*, 52 N. Y. 521 (11 Am. Rep. 747), it was said:

"The only remaining question is whether the cars were the personal property of the company against which the tax was levied, or a part of its real estate. If the former, no question can be made but that the collector had the right to levy on and sell them for the purpose of collecting the tax, being at the time in possession of the company against which the tax warrant was issued, irrespective of the lien or title of any other person by mortgage or otherwise. If the cars were a part of the real estate, it is equally clear that the collector had no right to levy upon or sell them. * · * * The question does not at all depend upon the length of the road, or whether the road of one company connects with that of others of the same gauge, and the companies so connecting, in the transaction of their business, are in the habit of running the cars of each over all the roads so connecting, or whether the road has no connections, and consequently, in the transaction of its · business, its cars do not run beyond its own track. I think no one would claim that a car of the New York Central, which, in the course of business, had been run to Chicago, was part of its real estate while there; and, if not such, I can discover no principle upon which the character of the property should be changed when it reached the Central track upon its return trip to New York. It must be borne in mind that the defendants in this case can claim no equity upon the ground that they acquired title by purchase upon the foreclosure of a mortgage given to secure the bonds of the company, as the collector's warrant overrides all equities of third persons in the property. * * * My conclusion is that they were personal property, and, as such, were liable to be seized and sold for the collection of a tax against the company. The reasons upon which this conclusion is based will be found in *Stevens* v. *Railroad Co.*, 31 Barb. 590, and in *Beardsley* v. *Ontario Bank*, Id. 619, and the authorities cited and reviewed, and a repetition here is unnecessary."

In *Williamson* v. *Railroad Co.*, 29 N. J. Eq. 311, it was said:

"Where the question has been directly presented whether the rolling stock of a railroad, included in a

mortgage of its roadbed and franchises, is real or personal property, the great weight of authority is in favor of its being considered as personalty,"—citing in addition to the cases heretofore cited: *Boston, etc., R. Co.* v. *Gilmore,* 37 N. H. 410 (72 Am. Dec. 336); *Coe* v. *Railroad Co.,* 10 Ohio St. 372 (75 Am. Dec. 518); *City of Dubuque* v. *Railroad Co.,* 39 Iowa, 56.

The court said further: "In this State the point was directly decided by the supreme court in *State Treasurer* v. *Somerville, etc., R. Co.,* 4 Dutch. 21."

In *Union Trust Co.* v. *Morrison,* 125 U. S. 591, at page 609, it was said:

"But it must be conceded that, until the mortgage was enforced by entry or judicial claim, the personal property of the railroad company was subject to its disposal in the ordinary course of business, and, as such, was liable to be seized and taken on execution for its debts. This is not only the common law, but the positive law of Illinois."

In *Pennock* v. *Coe,* 23 How. 117, 131, the case presented the question whether a mortgage covered the rolling stock, and was prior to a levy of execution issued upon judgment. The court said:

"The court might, upon any unreasonable resistance of the claim of the execution creditor, or inequitable interposition for delay, and to hinder and defeat the execution, permit a sale of the rolling stock sufficient to satisfy it."

See, also, *Sangamon, etc., R. Co.* v. *Morgan Co.,* 14 Ill. 163 (56 Am. Dec. 497); *Maus* v. *Railroad Co.,* 27 Ill. 77; *Priestman* v. *U. S.,* 4 Dall. 28; *Midland R. Co.* v. *Stevenson,* 130 Ind. 97; *Titus* v. *Mabee,* 25 Ill. 257; *Farmers' Loan & Trust Co.* v. *Railway Co.,* 3 Dill. 412; *Union Loan & Trust Co.* v. *Motor Road Co.,* 51 Fed. 850; Cooley, Tax'n (2d Ed.), 369, 441, in which it was said:

"The rolling stock of railroads is sometimes treated as personalty, and sometimes as fixtures, under tax laws; and perhaps under some laws it may be both,—that is, it may be included in the assessment of the road as realty, but be subject to be taken as personalty on process issued

for the enforcement of the tax levied. * * * What property shall be subject to distress, the statute itself will determine, and it may or may not be the same which is subject to execution on judgments."

We cannot sustain the complainant's contention that this coal is to be treated as a part of the entirety of this road. It is seen, under the cases cited, that it cannot be treated as a part of the realty, but is personal property, and was not in actual use at the time of the seizure. That it may have been convenient for the use of the company in the operation of its road no one can question, but, being personalty, it is subject, under the provisions of the statute, to levy and sale for the payment of the tax owing by the company. It is true, as contended by complainant, that in the State of Wisconsin rolling stock and fuel are declared to be fixtures; but the statute of Wisconsin makes the declaration, and hence the courts have held that it is a question of public policy in that State, and do not permit rolling stock and fuel to be taken upon execution or tax warrant. In Montana the same rule is adopted, but in both States the courts have but followed the provisions of the statute. We are satisfied from an examination of adjudicated cases that the weight of authority in this country is in favor of treating rolling stock and fuel as personalty, liable to seizure on execution and tax warrant. But, aside from this, we think our statute expressly provides that a tax warrant may be levied upon such property for the payment of taxes, and that no personal property is exempt from such seizure and sale.

The judgment of the court below is affirmed.

GRANT, HOOKER, and MOORE, JJ., concurred with LONG, C. J. MONTGOMERY, J., concurred in the result.