WILLIAM S. MAUS, Plaintiff in Error, *v.* THE LOGANS-PORT, PEORIA AND BURLINGTON RAILROAD, CHARLES L. FROST, EDWARD WESTON, and HENRY G. MAR-QUAND, Defendants in Error.

ERROR TO TAZEWELL.

In construing an amendatory statute, it is a fixed rule that the old law must be considered, the mischief arising under that law, and the remedy for it, which the new law may be supposed to provide.

The act of February 14th, 1855, amendatory of the revenue law, which directs that the track or superstructure of a railroad shall be denominated "fixed and stationary personal property," was intended to create a species of personal property not before known to the law.   For non-payment of taxes upon this property, the collector may levy upon the rails and remove them from the track, for the purpose of selling them.

This act has reference only to the collection of the revenue, and does not change the character of such property for other purposes.

Section 14, of the amendatory act of 1853, which provides that real property shall be liable for taxes on personal property and *vice versa*, has no application to this "fixed and stationary personal property;" such property must bear its own burden of taxation.

It is within the province of the legislature to provide that property, which is attached to the freehold, so as to become a part of it by the common law, may be regarded as personal property, for all purposes, or for any special purpose. Of this character is the act of Feb. 14th, 1855, which directs that the track and superstructure of a railroad, together with the improvements at stations, shall be denominated personal property, for the purposes of collecting the revenue.

THE opinion of the Court contains a full statement of the case.

JAMES ROBERTS, for the Plaintiff in Error.

BREESE, J.  This was a bill in chancery filed by the defendants in error, August 17th, 1861, in the Circuit Court of Tazewell county, alleging that the complainants had been

duly incorporated by the legislature of Illinois, and were the owners of the franchise and reversionary interest, in a line of railway extending from the eastern boundary line of the State, through the county of Tazewell and the city of Peoria, to the Mississippi river opposite the city of Burlington, in the State of Iowa; that said railroad connects at the eastern terminus with a railroad extending eastward to Logansport, in the State of Indiana; that said railroad is now, and has been for several years past, in active operation, and is used for the purpose of transporting freight, passengers, the United States mail, etc.; that there is no other railroad parallel on the north, nearer than the Chicago and Rock Island Railroad, and none nearer south than the Great Western Railroad, and that it is the only route over and by which the United States mails for that portion of the State of Illinois can be carried. That Charles L. Frost, Edward Weston, and Henry G. Marquand, own an interest in the property of said railroad, and have the actual possession and control of the same, with all its revenues, in trust for the payment of certain liabilities created in the construction of, and operating said road; that William S. Maus, claiming to be the treasurer of Tazewell county—a large amount of taxes assessed upon said railroad or its track, superstructure and improvements, by Tazewell county and the State of Illinois, being due and unpaid—threatens to take and remove from said road-bed, lying and being in said county of Tazewell, the iron rails laid and fixed thereupon, and constituting the track of said railway, and to sell the same by virtue of his authority as *ex officio* collector of said county, for the purpose of enforcing payment of said taxes, and pretends that he has been authorized and required to adopt said proceeding, by the board of supervisors of Tazewell county, and threatens to use the whole power of the county to carry his threats into execution unless the taxes so claimed by him shall be immediately paid; charges that the proceedings of said Maus are illegal, in violation of, and without any authority of law whatever; that such proceedings would tend to the breach of the peace, and be of irreparable injury to the railway; that it would be a flagrant violation of the criminal laws of the State under color of authority; that damages to be recovered at law would not compensate for the threatened injury; and concludes with a prayer for an injunction to restrain the said Maus from carrying his threats into execution.

At the September term, 1861, when the cause came on to be heard, it was submitted upon the following statement of facts:

It is agreed, that the complainant is a regularly incorpo-

rated company, for the purposes and objects stated in the bill. And that it has connections, and runs for the carriage of passengers and freight and United States mails, as stated in the bill; and that said company was formerly known as the Eastern Extension of the Peoria and Oquawka Railroad Company. It is further admitted, that the length of the main track and side tracks of said road in Tazewell county, liable to taxation, is sixteen and 35-100 miles; that the value of the fixed and stationary personal property in said county, as returned by said company, was $70,000, for the year 1857, upon which there was legally assessed for state, county and special taxes for that year, $863.76. For the year 1858 the value of the fixed and stationary personal property was $38,450, upon which there was assessed for that year, for state, county and special taxes, the sum of $439.64. For the year 1859, the value of the fixed and stationary personal property was $40,875, upon which there was legally assessed for that year upon the same, the sum of $457.79; and that the value of the fixed and stationary personal property for the year 1860 was $40,875, upon which there was legally assessed for taxes for that year the sum of $396.48. That no part of said taxes was ever paid by said company, but that there is now due for taxes on said fixed and stationary personal property, besides interest, the sum of $2,157.67; that the complainants were requested to pay said taxes, and that the defendant, on the 17th of August, 1861, after notifying the agents of said company, and upon their refusal to pay, was proceeding by warrant in due form of law to collect said taxes; and that the complainant had no personal property whatever, out of which said taxes could be collected; and that Tazewell county has adopted township organization; and that said defendant was, at the time stated, and still is, treasurer of said Tazewell county, and said defendant was proceeding to take up and remove the rails of said road, that composed and formed the track of said road, and which were affixed with spikes and chairs to the ties imbedded in the bed of said railroad, to take them to a convenient place for the purpose of sale, when he was stopped by injunction from so doing. It is further agreed, that this statement shall stand in lieu of an answer and bill of exceptions, and that this cause shall be submitted to the Circuit Court of Tazewell county, upon this statement of facts, and that the judge of said court may render his decision therein in term time, or vacation, as of the present term; and that either party may except to the decree rendered by said judge, without making any further bill of exceptions; and that a writ of error may be sued out of the Supreme Court for the Second Grand Division; and that whichever of said

parties shall be defendant in error, will enter their appearance without service of process; and that the bill, summons, and all orders and decrees made in this cause by said Circuit Court of Tazewell county, and this agreement, shall be certified as a complete record in said cause; and if said Supreme Court shall be of opinion that the defendant had no right, under the laws of the State as collector of taxes, where said railroad company had no personal property, out of which the taxes could be made, to take and remove the rails of said road, fixed to the ties and bed of the road, and used as the track thereof, for the taxes upon the fixed and stationary personal property, said injunction shall be made perpetual; otherwise to be dissolved, and said defendant be at liberty to proceed as aforesaid.

It is further agreed, that the rolling stock, and other moveable property, on the railroad, belong to said Frost, Weston and Marquand, who are operating the railroad in the name of the corporators, and that the rolling stock, and moveable property, have never belonged to said corporators.

Whereupon the court rendered a decree making the injunction perpetual. The plaintiff in error brings the cause to this court, and assigns for error, this decision of the Circuit Court.

The facts agreed, involve an inquiry into the revenue law as applicable to railroads in this State, constructed in counties which have adopted township organization, as the county of Tazewell had, at the time of filing and hearing this bill of complaint.

Previous to the act of Feb. 14th, 1853, the terms "real property" and "land" were held to mean and include, not only the land itself, whether laid out in town lots or otherwise, with all things contained within the land, but also, all buildings, structures and improvements, and other fixtures of every kind thereon, and all rights and privileges belonging, or in an any wise appertaining thereto. The term "personal property" was held to mean and include every tangible thing which was the subject of ownership, whether animate or inanimate, other than money, and forming part or parcel of real property, as above defined. (Scates' Comp. 1046, 1047, Sec. 2, Act of Feb. 12, 1853.) This act applied to counties under township organization. By section 22, it was provided, "that the president, secretary or principal accounting officer of every railroad company, etc., shall list for taxation, at its actual value, its real and personal property, moneys and credits within this State, in the manner following: In all cases returns shall be made to the assessor of each of the respective counties where such property may be situated, together with a statement of the amount of said property, which is situated in each county, town, city

or ward therein. The value of all moveable property shall be added to the stationary and fixed property, and real estate, and apportioned to such wards, cities and counties, *pro rata*, in proportion to the value of the real estate and fixed property in said ward, town, city or county. The remainder of the section authorizes the county assessor to whom returns are made, if he is of opinion that false or incorrect valuations have been made, or that the property has not been listed at its full value, or has not been listed in its proper location, or in cases where no returns have been made to him, to provide to have the same valued and assessed in the same manner as is prescribed in the several sections of the same act, regulating the duties of county assessors, in cases where there has been neglect or refusal to list property. (Ib. 1055.) By section 14 of an amendatory act of the same session, it is provided that personal property shall be liable for taxes levied on real property, and real property shall be liable for taxes levied on personal property, but the tax on personal property shall not be charged against real property, except in cases of removals, or when the tax cannot be made out of the personal property. (Ib. 1070.) Sections from fifteen to forty-three inclusive, have reference, chiefly, to providing for the sale of delinquent and forfeited lands, and their redemption. The thirty-eighth section provides that every tract of land, or town lot offered at public sale, for the taxes due thereon, and not sold for want of bidders, shall be declared to be forfeited to the State. The fortieth section provides for the redemption of such forfeited lands.

On the 14th February, 1855, this act was amended, and by the second section the return of the schedule or list of taxable property of a railroad company must be made to the county clerk instead of to the assessor, and the clerk is required to lay the list before the board of supervisors, at their meeting to equalize assessments, and if a majority of the board is satisfied that the return is correct, the property is to be assessed accordingly—but if not, the board can assess it, etc.

The fourth section is as follows:

"The schedule or list of the taxable property of railroad companies shall set forth a description of all the real property, owned or occupied by the company, in each county, town, and city, through which such railroad may run; and the actual value of each lot or parcel of land, including the improvements thereon, (except the track or superstructure of said road), shall be annexed to the description of such lot or parcel of land. Said list shall set forth the number of acres taken for right of way, stations, or other purposes, from each tract of land through which said road may run, describing said

land, as near as practicable, in accordance with the surveys of the United States, giving the width of the strip, or parcel of land, and its length through each tract; also, the whole number of acres, and the aggregate value thereof, in said county, town, and city. All of the property mentioned in this section shall be denominated 'real property.' The list aforesaid shall set forth the length of the main track, and the length of all side tracks, and turn-outs, in each county, city, and town, through which the road may run, with the actual value of the same, and the value of the improvements at each of the several stations, when said stations are not a part of city or town lots. The said stations and track shall be denominated 'fixed and stationary personal property.' The list shall contain an inventory of the rolling stock belonging to said company, with the value thereof; said rolling stock shall be denominated 'personal property;' also, a statement of the value of all the personal property, owned by said company, in each county, city, and town. The length of the whole of the main track within this State, and the total value of the rolling stock, shall be set forth in said list. The rolling stock shall be listed and taxed in the several counties, towns, and cities, *pro rata*, in proportion as the length of the main track in such county, town, or city, bears to the whole length of the road. All other property shall be listed and taxed in the county, town, or city, where the same is located or used." The remainder of the section is directory to the assessor as to the manner in which he shall enter the description of the right of way, or land for station purposes, on his books, and "when advertised by any sheriff or collector to be sold for taxes, or when so sold, no other description shall be necessary." (Ib. 1106–7.)

We have quoted this section at length, for the reason that this controversy arises upon the construction to be placed upon it. It classifies railroad property somewhat differently from the act of 1853. In that act, railroad property was known only as real property and personal property, and subjected to taxes as such, and to compulsory payment of them, in the same manner as property of natural persons, each description of property being liable for the taxes assessed upon any one description. In construing any amendatory act, it is a fixed rule that the old law must be considered—the mischiefs arising under that law, and the remedy for them which the new law may be supposed to provide. We have seen in what manner the old law classified such property. We apprehend the evils resulting from it were found to be, that the government was liable to the loss of its sustenance by the obstacles thrown in the way of the speedy collection of the

taxes, by the very law itself, there being no other mode provided than by the sale of their real property, in default of personal property, with a redemption of two years allowed after the sale, or, in case of no sale, a forfeiture to the State, then by carrying it, from year to year, on the assessor's books, as forfeited land, to be again sold as such for the taxes assessed. It is a part of the public history of this State, that purchasers could not be found to buy for taxes such property, who were willing to take the risk of the legality of the sales, and other risks, the consequence of which was, a forfeiture to the State; and the counties, through which the roads ran, were deprived of their annual taxes due them from such property. The object of the amendatory law was, as we conceive, to provide some remedy for this, which they have done by giving a description other than "real property," and other attributes, to a portion of such property, thereby rendering it susceptible of immediate transfer and delivery, on a sale of it for the taxes assessed upon it.

The complainants contend, that the only object of the legislature in so classifying railroad property, was for the purpose of valuation, with a view to increase the aggregate of the revenue. We do not precisely understand, how the aggregate of revenue can be increased by classifying this kind of property. It is very evident the statute, in the valuation, requires the road bed to be separated from the track and superstructure placed upon it, and to be valued separately. Now is it possible they could produce more revenue, by being valued separately, than if valued together? Suppose the value of the road bed be, ten thousand dollars per mile, and the value of the superstructure, six thousand dollars per mile, do these two sums produce more revenue than would be produced by a valuation of the road bed and superstructure, jointly, at sixteen thousand dollars per mile? As in the case of improved property owned by individuals, by separating the house from the lot, the State would derive no more revenue from them separately, than it would from them together. The valuation in each respect, controlling the amount of the revenue to be derived from the property. If such was the only design of this amendatory act, it need not have been passed, as it is no improvement whatever on the old law. It is quite manifest, we think, that the legislature had something more in view, in thus classifying railroad property, and in denominating a portion of its fixtures, placed by artificial means upon the land owned by it, " personal property," than mere facility in its valuation. The road bed and right of way is denominated " personal property." For a delinquency in paying the taxes assessed upon

them, they can be sold, and redeemed in two years after the sale. The main track, the side tracks, the turn-outs, and the buildings of the several stations, are to be scheduled separately, and denominated "fixed and stationary personal property." The rolling stock shall be denominated "personal property."

Here is, evidently, a design on the part of the legislature, to create a species of personal property, not before known to the law, and with the purpose, as we think, of subjecting it, in certain contingencies, to a separation from the soil on which it may be fixed. If not, why call it personal property, at all? If, though "fixed and stationary," it was never to be, under any circumstances, subject to removal, and to all intents, and for every purpose, of the same nature and character as land itself, why not call it real estate? What is gained by designating it as personal property, when it shall never, under any circumstances, or for any purpose, public or otherwise, possess any of the attributes of such property? We are at a loss to discover any good reason for the distinction, unless it be, in view of the loss of revenue to the State and counties, by the neglect of such companies to pay the taxes assessed on such property, that the legislature has endowed it with the attributes of personal property, so that it might be removed and sold for the taxes, an attempt to do which, would bring delinquent or reluctant companies to a performance of their obligations to the State. To make the road bed, on which the superstructure is placed, personal property, would have been, for this purpose, of no practical benefit, as it could not be removed, and though sold for the taxes, the company would continue in its enjoyment. Not so with the main and side tracks, turn-outs, and improvements at the several stations. They are placed there by artificial means, and easily removed. It is true, they are stationary and fixed, but surely it will not be contended, that although fixtures of a certain kind, which, by the common law, are deemed a part of the freehold and cannot be removed, that the legislature may not destroy this character, and make them personal property liable to be sold for taxes, or upon execution to pay a private debt. It is a question of expediency, and of policy only, whether the dwelling-house shall not, for purposes of taxation, be deemed personal property, to be severed from the land if the taxes assessed upon the house are not duly paid, and the house exposed to sale on that account.

It cannot be denied, that this "fixed and stationary personal property," is liable for the taxes assessed upon it—the defendants do not deny that—it follows then, like all other property, it is liable to be sold for the assessments. The defendants,

however, insist, that for the taxes assessed on this property and unpaid, the land is liable, and that this property is liable for the tax assessed upon the land—that there is a mutual liability under section fourteen already quoted. That section does not so provide, as we understand it. The provision is, that personal property of the kind and nature denominated in that act, shall be liable for the taxes on real estate, and *vice versa*, but it nowhere provides that land or personal property shall be subject to the taxes assessed upon "fixed and stationary personal property," that new description of personal property, so by the act created. This kind of property stands by itself, isolated from real and from personal property, and is made, by the law, to bear its own burdens, and if it cannot be sold and removed, as the defendants contend it cannot be, then the new law is of less avail than the old law, for under the old law, the real property could be sold to pay the taxes assessed on the personal property in certain cases. Under the new law this kind of personal property is not so liable, and no taxes assessed upon it can be collected, unless authority is conceded to the collector to take it and sell it. This property is a new species of property, created by the legislature, made distinct from all other property, and assessed and valued as such, and as the lands and personal property are not made liable for the taxes assessed upon this kind of property, as they clearly are not, it must follow, that this new description of property must be liable for the assessments upon it, to be collected, on default, by a sale of the property. Surely, the legislature did intend, that this new description of property should be liable to taxation, and to be sold, if the taxes were not duly paid, else how could it be subjected to this burden?

It seems to follow, as a necessary consequence · from these premises, that the sheriff or collector, to put the property in a position to be sold, may sever the superstructure from the freehold, and take it into his possession precisely the same as he could any other fixtures which the legislature may have declared to be personal property, and subject to removal. In taking personal property for taxes, the collector, in all cases, has the right to remove the property. His right to do so, cannot be questioned, and it is no argument against it, that he may exercise it in a riotous manner, or at an improper hour. Nor as to the quantity of such personal property to be removed to satisfy the taxes, can the collector be restricted, unless his act, in this regard, should be oppressive, and wanton, and done with a design unnecessarily to vex and harass the delinquent.

That the State should have this power, vast and destruc-

tive as it may be to some great interests of the country when exercised, there seems great propriety. In considering such questions as have arisen in this case, we must bear in mind the maxim, that the government must not be deprived of the aliment indispensable to its life—that it must be sustained at all hazards, regardless of the individual suffering which may be produced, the derangement of the business affairs of the community, or the crippling of corporate powers, for whatever purposes they may have been granted. All must yield to the inexorable demands of the government. Taxation, in some form, must exist in every civilized community, and must be enforced upon property, if not paid in money. It is a public burden, which all persons and corporations should be willing to bear, since all receive a just compensation in the benefits conferred by the government. Nay, it is a duty which all should be prompt to perform. Taxation is the breath of its life—if that be stopped, anarchy, ruin and death, would be the inevitable catastrophe. As was said by the Supreme Court of the United States in the case of *Priestman* v. *The United States*, 4 Dallas, 28, "Public policy, national purposes, and the regular operations of government, require that the revenue system should be faithfully observed and strictly executed."

We know of no principle that will exonerate an individual from the prompt payment of his taxes, if he has property out of which they can be made, nor of any applicable to railroad corporations, however conducive they are admitted to be, to the development of the resources of a State, or however necessary to the transaction of its widely extended business. Nor is it an argument in favor of relieving the company from the taxes imposed upon their property, that they have become embarrassed for its construction and equipment, incurring therefor, heavy debts. It is no fault of the State, that it has become embarrassed, and contracted debts beyond its ability to pay, but it is the just claim of the State, that the dues of the company to it, shall be first paid, in preference to all other claims upon it.

The conduct of this road furnishes a strong argument, in favor of the view of the case we have presented. Keeping in view the principle, that taxes must be paid before all other obligations, this record shows, this road has not paid one dollar of taxes assessed upon its fixed and stationary personal property for the last four years, having been delinquent for the years 1857, 1858, 1859 and 1860, until the amount due the county of Tazewell, has reached the very considerable

sum of two thousand one hundred and fifty-seven and sixty-seven one-hundredths dollars, exclusive of interest. This preferred and paramount claim of the public, has been postponed, year after year, by the company, and they now contend, when the attempt to collect it is made in good earnest, that the mode adopted is illegal—that great public interests will be destroyed—and a wanton sacrifice of property inevitable.

The legality of the mode proposed to be adopted by the collector, we do not question. He can take these rails from their bed and sell them, in the same manner as he could take a horse from the stable of an individual owner, for the payment of taxes, and if the property be sacrificed, if great public interests be injured, we have only to say, all these considerations must yield to the paramount claim of the State to be sustained in its existence—a claim so great and overriding, as to dwarf all others, which may be set off against it. It is a good law, and should be strictly enforced, doing as little injury as possible in the execution of its provisions.

We think it may be said, with truth, that the railroad companies of this State have discharged their taxes with commendable promptitude, and performed their obligations in a manner, generally, satisfactory. This road is the only one, so far as we are informed, which has manifested a disposition to postpone the just claims of the State, to those of other creditors, and to evade its responsibility to the power which protects it in the enjoyment of its franchise. We are slow to believe that other railroad companies, operating in this State, desire such a construction should be placed on the revenue law as the appellees contend for, by which they may avoid the payment of their taxes, and, to that extent, assume an attitute of hostility to the government.

The views here expressed are not intended to apply to a levy and sale, by execution, of this species of property, or to retract, or qualify, in the slightest degree, former decisions of this court, on that question. This species of property is made personalty, to a limited extent and for revenue purposes only, and the attributes of personal property only attach to it for such purposes. The General Assembly, in regulating the liability of property to taxation, sought to prescribe the mode in which it was to be subjected to that burden, and were not seeking to change, wholly, its incidents. Was such a provision found in the act regulating sales on execution, or in the law regulating chattel mortgages, or had the legislature declared, in those statutes, this description of fixtures to be "fixed and stationary personal property," then it would

assume the attributes of personalty, for these several purposes. No such design has been indicated, except in this revenue law, and for purposes of revenue, and since no other property, real or personal, is made liable to the burden imposed upon this species, we are forced to conclude, the legislature designed that, on delinquency, it should be subject to sale and removal.

The decree of the Circuit Court is reversed, and a decree here, that the injunction be dissolved and the bill dismissed.

*Decree reversed.*

CATON, C. J.   I do not understand that it was the intention of the legislature that, in any event, the rails should be severed from the track, and the public deprived of its use, which was the great object in view in granting the franchise.   This the law would not allow either creditor or owner to do. While it is made personal property for the convenience of assessment, it is fixed and stationary for the purpose of securing its permanent location, that it may subserve the public good.   It seems to me that the entire track should be sold to pay the tax, rather than destroy it by tearing up the rails.