# PEMBINA CONSOLIDATED SILVER MINING AND MILLING COMPANY *v.* PENNSYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 189.   Argued February 16, 1888. — Decided March 19, 1888.

The exaction of a license fee by a State to enable a corporation organized under the laws of another State to have an office within its limits for the use of the officers, stockholders, agents, or employés of the corporation, does not impinge upon the commercial clause of the Federal Constitution (Article I, section VIII, clause 3), provided the corporation is neither engaged in carrying on foreign or interstate commerce, nor employed by the government of the United States.

Corporations are not citizens within the meaning of the clause of the Constitution declaring that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States, Article IV, section II, clause 1.

A private corporation is included under the designation of "person" in the Fourteenth Amendment to the Constitution, section I.

The provisions in the Fourteenth Amendment to the Constitution, section I, that "no State shall deny to any person within its jurisdiction the equal protection of the laws," do not prohibit a State from requiring for the admission within its limits of a corporation of another State such conditions as it chooses.

The only limitation upon the power of a State to exclude a foreign corporation from doing business within its limits, or hiring offices for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign.

THE court stated the case as follows:

In May, 1881, the Pembina Consolidated Silver Mining and Milling Company was incorporated under the laws of Colorado, with an authorized capital of one million dollars, for the purpose of carrying on a general mining and milling business in that State. Its principal office is in Alpine, Colorado, and since July 1, 1881, it has had, and still has, an office in the city of Philadelphia, "for the use of its officers, stockholders, agents, and employés." On the 31st of October, 1881, the Auditor General and Treasurer of Pennsylvania assessed a tax against the corporation for "office license" from July 1, 1881, to July 1, 1882, at the rate of one-fourth of a mill on each dollar of its capital stock, which amounted to $250, and added to it a penalty of $125 for failure to take out a license. This tax was assessed and penalty imposed under section sixteen of the act of the legislature of the Commonwealth, approved June 7, 1879, entitled "An act to provide revenue by taxation." The section provides as follows:

"That from and after the first day of July, A.D. 1879, no foreign corporation, except foreign insurance companies, which does not invest and use its capital in this Commonwealth, shall have an office or offices in this Commonwealth, for the use of its officers, stockholders, agents, or employés, unless it shall first have obtained from the Auditor General an annual license so to do; and for said license every such corporation shall pay into the State treasury, for the use of the Commonwealth, annually, one-fourth of a mill on each dollar of capital stock which said company is authorized to have, and the Auditor General shall not issue a license to any corporation until said license fee shall have been paid. The Auditor General and State Treasurer are hereby authorized to settle and have collected an account against any company violating the provisions of this section for the amount of such license fee, together with a penalty of fifty per centum for failure to pay the same: *Provided*, That no license shall be necessary for any corporation paying a tax under any previous section of this act, or whose capital stock, or a majority thereof, is owned or con-

trolled by a corporation of this State which does pay a tax under any previous section of this act."

It is conceded that the corporation is not within the exception of the *proviso* of the act, as it pays no tax under any previous section.

From this assessment, or settlement of the account against the corporation, as it is termed in the record, the corporation appealed to the Court of Common Pleas of Dauphin County, on the ground, among others, that the said 16th section of the revenue act is in conflict with the clause of the Constitution of the United States declaring that "Congress shall have power to regulate commerce with foreign nations and among the several States," (Art. 1, sec. 8, clause 3,) and also with the clause declaring that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," (Art. 4, sec. 2, clause 1.) In that court the Commonwealth filed a declaration in debt against the corporation for the amount claimed. It does not appear from the record that any answer or plea was filed to this declaration, but it is assumed that issue was joined, as counsel of the parties agreed that a trial by jury should be waived, and that the case should be submitted to the decision of the court, subject to a writ of error as in other cases, at the option of either party.

The Court of Common Pleas affirmed the validity of the assessment, and the corporation took the case on writ of error to the Supreme Court of the Commonwealth, which affirmed the judgment of the Common Pleas. To review this judgment the case is brought here.

*Mr. James W. M. Newlin* for plaintiff in error.

*Mr. W. S. Kirkpatrick*, Attorney General of Pennsylvania, for defendant in error. *Mr. John F. Sanderson*, Deputy Attorney General, was with him on the brief.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The only questions passed upon by the Supreme Court of Pennsylvania, which can be considered by us, are those which

arise upon its ruling against the contention of the plaintiff in error that the statute of the Commonwealth is in conflict with clauses of the Federal Constitution. Its ruling upon the conformity of the statute with the constitution of the Commonwealth does not come under our jurisdiction.

The clauses of the Federal Constitution, with which it was urged in the state Supreme Court that the statute conflicts, are the one vesting in Congress the power to regulate foreign and interstate commerce, the one declaring that the citizens of each State are entitled to the privileges and immunities of citizens in the several States, and the one embodied in the Fourteenth Amendment declaring that no State shall deny to any person within its jurisdiction the equal protection of the laws.

1. It is not perceived in what way the statute impinges upon the commercial clause of the Federal Constitution. It imposes no prohibition upon the transportation into Pennsylvania of the products of the corporation, or upon their sale in the Commonwealth. It only exacts a license tax from the corporation when it has an office in the Commonwealth for the use of its officers, stockholders, agents, or employés. The tax is not for their office, but for the office of the corporation, and the use to which it is put is presumably for the latter's business and interest. For no other purpose can it be supposed that the office would be hired by the corporation.

The exaction of a license fee to enable the corporation to have an office for that purpose within the Commonwealth is clearly within the competency of its legislature. It was decided long ago, and the doctrine has been often affirmed since, that a corporation created by one State cannot, with some exceptions, to which we shall presently refer, do business in another State without the latter's consent, express or implied. In *Paul* v. *Virginia*, 8 Wall. 168, this court, speaking of a foreign corporation, (and under that definition the plaintiff in error, being created under the laws of Colorado, is to be regarded,) said: "The recognition of its existence even by other States, and the enforcement of its contracts made therein, depend purely upon the comity of those States, — a comity which is never extended where the existence of the corporation,

or the exercise of its powers are prejudicial to their interests, or repugnant to their policy.    Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows as a matter of course that such assent may be granted upon such terms and conditions as those States may think proper to impose.    They may exclude the foreign corporation entirely; they may restrict its business to particular localities; or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interests.    The whole matter rests in their discretion."    A qualification of this doctrine was expressed in *Pensacola Telegraph Company* v. *Western Union Telegraph Company*, 96 U. S. 1, 12, so far as it applies to corporations engaged in commerce under the authority or with the permission of Congress.    The act of July 24, 1866, "to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," which was considered in that case, declared that any telegraph company then organized, or which might thereafter be organized, under the laws of any State, should have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States, which had been or might thereafter be declared such by act of Congress, and over, under, or across the navigable streams or waters of the United States," upon certain conditions specified therein; and this court held that the telegraph, as an agency of commerce and intercommunication, came under the controlling power of Congress, as against any hostile state legislation; and that the Western Union Telegraph Company, having accepted the conditions of the act, could not be excluded by another State from prosecuting its business within her jurisdiction.    The legislature of Florida had granted to another company, for twenty years, the exclusive right to establish and maintain telegraph lines in certain counties of the State, but this exclusive grant was adjudged to be invalid as against the company acting under

the law of Congress. And undoubtedly a corporation of one State, employed in the business of the general government, may do such business in other States without obtaining a license from them. Thus, to take an illustration from the opinion of Mr. Justice Bradley in a case recently decided by him, "if Congress should employ a corporation of ship builders to construct a man-of-war, they would have the right to purchase the necessary timber and iron in any State of the Union," and, we may add, without the permission and against the prohibition of the State. *Stockton* v. *Baltimore and New York Railroad Co.*, 32 Fed. Rep. 9, 14.

These exceptions do not touch the general doctrine declared as to corporations not carrying on foreign or interstate commerce, or not employed by the government. As to these corporations, the doctrine of *Paul* v. *Virginia* applies. The Colorado corporation does not come within any of the exceptions. Therefore, the recognition of its existence in Pennsylvania, even to the limited extent of allowing it to have an office within its limits for the use of its officers, stockholders, agents, and employés, was a matter dependent on the will of the State. It could make the grant of the privilege conditional upon the payment of a license tax, and fix the sum according to the amount of the authorized capital of the corporation. The absolute power of exclusion includes the right to allow a conditional and restricted exercise of its corporate powers within the State. *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Lafayette Insurance Co.* v. *French*, 18 How. 404; *Ducat* v. *Chicago*, 10 Wall. 410 · *St. Clair* v. *Cox*, 106 U. S. 350.

We do not perceive the pertinency of the position advanced by counsel that the tax in question is void as an attempt by the State to tax a franchise not granted by her, and property or business not within her jurisdiction. The fact is otherwise. No tax upon the franchise of the foreign corporation is levied, nor upon its business or property without the State. A license tax only is exacted as a condition of its keeping an office within the State for the use of its officers, stockholders, agents, and employés; nothing more and nothing less; and

in what way this can be considered as a regulation of interstate commerce is not apparent.

2. Nor does the clause of the Constitution declaring that the " citizens of each State shall be entitled to all privileges and immunities of citizens in the several States" have any bearing upon the question of the validity of the license tax in question. Corporations are not citizens within the meaning of that clause. This was expressly held in *Paul* v. *Virginia.* In that case it appeared that a statute of Virginia, passed in February, 1866, declared that no insurance company not incorporated under the laws of the State should carry on business within her limits without previously obtaining a license for that purpose, and that no license should be received by the corporation until it had deposited with the treasurer of the State bonds of a designated character and amount, the latter varying according to the extent of the capital employed. No such deposit was required of insurance companies incorporated by the State for carrying on their business within her limits. A subsequent statute of Virginia made it a penal offence for a person to act in the State as an agent of a foreign insurance company without such license. One Samuel Paul, having acted in the State as an agent for a New York insurance company without a license, was indicted and convicted in a Circuit Court of Virginia, and sentenced to pay a fine of $50. On error to the Court of Appeals of the State the judgment was affirmed, and to review that judgment the case was brought to this court. Here it was contended, as in the present case, that the statute of Virginia was invalid by reason of its discriminating provisions between her corporations and corporations of other States; that in this particular it was in conflict with the clause of the Constitution mentioned, that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States. But the court answered, that corporations are not citizens within the meaning of the clause; that the term citizens, as used in the clause, applies only to natural persons, members of the body politic owing allegiance to the State, not to artificial persons created by the legislature, and possessing only

such attributes as the legislature has prescribed; that the privileges and immunities secured to citizens of each State in the several States by the clause in question are those privileges and immunities which are common to the citizens in the latter States under their constitution and laws by virtue of their citizenship; that special privileges enjoyed by citizens in their own States are not secured in other States by that provision; that it was not intended that the laws of one State should thereby have any operation in other States; that they can have such operation only by the permission, express or implied, of those States; that special privileges which are conferred must be enjoyed at home, unless the assent of other States to their enjoyment therein be given; and that a grant of corporate existence was a grant of special privileges to the corporators, enabling them to act for certain specified purposes as a single individual, and exempting them, unless otherwise provided, from individual liability, which could therefore be enjoyed in other States only by their assent. In the subsequent case of *Ducat* v. *Chicago*, 10 Wall. 410, the court followed this decision, and observed that the power of the State to discriminate between her own domestic corporations and those of other States, desirous of transacting business within her jurisdiction, was clearly established by it and the previous case of *Augusta* v. *Earle*, 13 Pet. 519, and added that "as to the nature or degree of discrimination, it belongs to the State to determine, subject only to such limitations on her sovereignty as may be found in the fundamental law of the Union." *Philadelphia Fire Association* v. *New York*, 119 U. S. 110, 120.

3. The application of the Fourteenth Amendment of the Constitution to the statute imposing the license tax in question is not more apparent than the application of the clause of the Constitution to the rights of citizens of one State to the privileges and immunities of citizens in other States. The inhibition of the amendment that no State shall deprive any person within its jurisdiction of the equal protection of the laws was designed to prevent any person or class of persons from being singled out as a special subject for discriminating

and hostile legislation. Under the designation of person there is no doubt that a private corporation is included. Such corporations are merely associations of individuals united for a special purpose, and permitted to do business under a particular name, and have a succession of members without dissolution. As said by Chief Justice Marshall, "The great object of a corporation is to bestow the character and properties of individuality on a collective and changing body of men." *Providence Bank* v. *Billings*, 4 Pet. 514, 562. The equal protection of the laws which these bodies may claim is only such as is accorded to similar associations within the jurisdiction of the State. The plaintiff in error is not a corporation within the jurisdiction of Pennsylvania. The office it hires is within such jurisdiction, and on condition that it pays the required license tax it can claim the same protection in the use of the office that any other corporation having a similar office may claim. It would then have the equal protection of the law so far as it had anything within the jurisdiction of the State, and the constitutional amendment requires nothing more. The State is not prohibited from discriminating in the privileges it may grant to foreign corporations as a condition of their doing business or hiring offices within its limits, provided always such discrimination does not interfere with any transaction by such corporations of interstate or foreign commerce. It is not every corporation, lawful in the State of its creation, that other States may be willing to admit within their jurisdiction or consent that it have offices in them; such, for example, as a corporation for lotteries. And even where the business of a foreign corporation is not unlawful in other States the latter may wish to limit the number of such corporations, or to subject their business to such control as would be in accordance with the policy governing domestic corporations of a similar character. The states may, therefore, require for the admission within their limits of the corporations of other States, or of any number of them, such conditions as they may choose, without acting in conflict with the concluding provision of the first section of the Fourteenth Amendment. As to the meaning and extent of that section of the amend-

ment see *Barbier* v.' *Connolly*, 113 U. S. 27; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Missouri* v. *Lewis*, 101 U. S. 22, 30; *Missouri Pacific Railway Co.* v. *Humes*, 115 U. S. 512; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Hayes* v. *Missouri*, 120 U. S. 68.

The only limitation upon this power of the State to exclude a foreign corporation from doing business within its limits, or hiring offices for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign. The control of such commerce, being in the federal government, is not to be restricted by state authority.

*Judgment affirmed.*

Mr. JUSTICE BRADLEY was not present at the argument of this cause and took no part in its decision.