O'NEILL v. MORSE

OPINION OF THE COURT

1. DEATH—WRONGFUL DEATH—UNBORN CHILD—PERSON.
   An unborn child, negligently injured and subsequently stillborn, is not a "person" within the meaning of the Michigan wrongful death act (MCLA § 600.2922).

2. CONSTITUTIONAL LAW—DUE PROCESS—EQUAL PROTECTION—UNBORN CHILD.
   An unborn child is not a "person" within the meaning of the due process and equal protection articles of the United States Constitution or the Michigan Constitution of 1963 (US Const, Am 14, § 1; Const 1963, art 4, § 2).

DISSENTING OPINION

BRONSON, J.

3. CONSTITUTIONAL LAW—"PERSONS".
   *Indians, aliens, convicted felons, corporations, and labor unions have all been held to be "persons" entitled to the Federal Constitutional guarantees of due process and equal protection of the laws (US Const, Ams 1–10, 14).*

4. CONSTITUTIONAL LAW—CHILDREN.
   *Federal Constitutional guarantees apply to children as well as adults (US Const, Ams 1–10, 14).*

5. CONSTITUTIONAL LAW—CHILDREN—UNBORN CHILD.
   *The view that an unborn child may be a "person" for the purpose of some laws but will not be a "person" for the purpose of other laws is inconsistent with the fundamental constitutional guarantees of due process and equal protection of the law.*

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 52 Am Jur, Torts § 98.
Action for death of unborn child. 15 ALR3d 992.
[2–7] 16 Am Jur 2d, Constitutional Law §§ 492, 558.

6. Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ—Hᴏᴍɪᴄɪᴅᴇ—Uɴʙᴏʀɴ Vɪᴄᴛɪᴍ.

   *The concept that one may kill a human being after his birth and be held responsible under the law but go free after killing a human being before his birth is a denial of equal protection of law and should not be condoned by any court.*

7. Dᴇᴀᴛʜ—Wʀᴏɴɢғᴜʟ Dᴇᴀᴛʜ—Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ—EQᴜᴀʟ Pʀᴏ-
   ᴛᴇᴄᴛɪᴏɴ.

   *The purpose of the Michigan wrongful death act is to make wrongdoers liable for damages when they kill a person through negligence or negligently inflicted injuries; if the wrongful death act is to be constitutional, it must apply with equal force to all who are killed as a result of another's negligence, including an unborn child (MCLA § 600.2922).*

Appeal from Saginaw, Fred J. Borchard, J. Submitted Division 3 November 4, 1969, at Grand Rapids. (Docket No. 6,467.) Decided December 9, 1969. Leave to appeal granted Feburary 18, 1970. See 383 Mich 767.

Complaint by James O'Neill, administrator of the estate of Baby Boy Pinet, deceased, against Eldon Morse, Bernice Morse and Gary R. Root, for damages under the wrongful death act. Summary judgment for defendants. Plaintiff appeals. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Heilman, Purcell, Tunison & Cline,* for defendants Eldon Morse and Bernice Morse.

*Smith, Brooker, Harvey & Cook,* for defendant Gary R. Root.

Before: Fɪᴛᴢɢᴇʀᴀʟᴅ, P. J., and R. B. Bᴜʀɴs and Bʀᴏɴsᴏɴ, J. J.

R. B. Burns, J.   Carol Pinet, eight months preg-
nant, was struck by an automobile driven by defend-
ant Gary R. Root after his vehicle had collided with
an automobile owned by defendant Eldon Morse
and driven by defendant Bernice Morse.   As a re-
sult of the accident Mrs. Pinet and her unborn child
were injured.   Subsequently, the child was stillborn.
The case was dismissed by the trial court on the
ground that an unborn child is not a person within
the meaning of the Michigan wrongful death act.
MCLA § 600.2922 (Stat Ann 1969 Cum Supp
§ 27A.2922).

Plaintiff appeals, claiming such an interpretation
denies the plaintiff "due process of law" and "equal
protection of the law" under the Federal constitu-
tion[1] and the Michigan Constitution of 1963.[2]

This question has not been answered by any de-
cisions of the Michigan Supreme Court or the
United States Supreme Court.   The Michigan Su-
preme Court in *Powers* v. *City of Troy* (1968), 380
Mich 160, held that an unborn child negligently in-
jured and subsequently stillborn was not a "person"
within the meaning of the Michigan wrongful death
act.   Accordingly, we hold that such an unborn child
is not a "person" within the meaning of the "due
process" and "equal protection" articles of the
United States Constitution and the Michigan Con-
stitution of 1963.

Affirmed.   Costs to appellees.

Fitzgerald, P. J., concurred.

---

[1] "No state shall make or enforce any law which shall abridge
the privileges or immunities of citizens of the United States; nor
shall any state deprive any person of life, liberty or property, without
due process of law; nor deny to any person within its jurisdiction
the equal protection of the laws."   US Const, Am 14, § 1.

[2] "No person shall be denied the equal protection of the laws."
Const 1963, art 1, § 2.

Bronson, J. (*dissenting*). The development of our constitutional democracy and the constantly evolving legal history of our Bill of Rights guaranteeing "due process" and the "equal protection of the laws" to all persons are not accidental.

Through the years the state and Federal courts, including the United States Supreme Court, have struggled with the meaning of the word "person" as that term is used in the Bill of Rights.

There was a time, early in our nation's history, when Indians were not regarded as persons, and the courts had to make it plain that indeed Indians were persons, entitled to constitutional guarantees. See 42 CJS, Indians, § 1, p 647; *United States, ex rel. Standing Bear,* v. *Crook* (CC Neb, 1879), 25 F Cas 695, 696 (No. 14,891) (5 Dill 453); *United States* v. *Shaw-Mux* (D Ore, 1873), 27 F Cas 1045 (No. 26,-268) (2 Sawyer 364); *United States* v. *Miller* (D Nev, 1901), 105 F 944.

In another series of cases the courts made it plain that aliens (non-citizens) were "persons" entitled to the protection of the constitutional guarantees. See *Marcello* v. *Ahrens* (CA 5, 1954), 212 F2d 830, 837; *In re Lee Wee's Petition* (SD Cal, 1956), 143 F Supp 736, 738; *United States* v. *Murff* (CA 2, 1958), 260 F2d 610, 614.

In other cases, questions arose as to whether convicts or felons were "persons" entitled to constitutional protection, and the decision was made that a convicted felon, even though civilly "dead" was nevertheless a person entitled to protection under the Fourteenth Amendment. See *In re Jones* (1962), 57 Cal 2d 860, 862 (22 Cal Rptr 478, 480, 372 P2d 310, 312), and cases cited therein.

Questions also arose as to whether corporations were persons within the meaning of the clauses granting all persons due process and the equal pro-

tection of the laws, and our courts decided that they were. See *Pembina Consolidated Silver Mining & Milling Co.* v. *Pennsylvania* (1888), 125 US 181 (8 S Ct 737, 31 L Ed 650, 653); *Smyth* v. *Ames* (1898), 169 US 466, 522 (18 S Ct 418, 42 L Ed 819); *Providence Journal Co.* v. *McCoy* (D RI, 1950), 94 F Supp 186, *aff'd.* (CA 1, 1951), 190 F2d 760, 764; *D. D. B. Realty Co.* v *Merrill* (D Vt, 1964), 232 F Supp 629, 637. See, also, *Turnbull* v. *Prentiss Lumber Co.* (1884), 55 Mich 387, 393, and *Chicago & N. W. R. Co.* v. *Ellson* (1897), 113 Mich 30, 33.

A labor union has been found to be a "person" within the constitutional meaning of that term. See *Penello* v. *Milk Drivers & Dairy Employees Local Union* (D Md, 1957), 156 F Supp 366, 369.

More recently, the United States Supreme Court has made it plain that the guarantees spelled out in our Constitution are not the exclusive property of adults, but apply to children as well.

*In re Gault* (1967), 387 US 1, 13 (87 S Ct 1428, 18 L Ed 2d 527, 538), Mr. Justice Fortas, writing for the majority, said: "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."

If the Fourteenth Amendment and the Bill of Rights protect children and infants, do they not also protect unborn children, such as Baby Boy Pinet, an eight-month-old fetus, made of flesh and bone and blood? Is not such a child equally a "person" along with such inanimate "persons" as corporations and labor unions?

What is at stake in this litigation is whether Baby Boy Pinet, an unborn child—killed by the wrongful acts of the defendants—was or was not a human being, a "person" entitled to the Constitution's protections given to all persons in this State and Nation. In *LaBlue* v. *Specker* (1960), 358 Mich 558, our State Supreme Court unanimously held that a

two-and-one-half-month-old fetus was indeed a "child" or "person" within the meaning of another Michigan statute, the Michigan dramshop law (CLS 1956, § 436.22 [Stat Ann 1957 Rev § 18.993]). In *LaBlue,* the Michigan Supreme Court relied heavily on *Williams* v. *Marion Rapid Transit, Inc.* (1949), 152 Ohio St 114 (87 NE2d 334, 10 ALR2d 1051), a decision which held that an unborn child is a "person" within the *constitutional* provision giving every "person" a remedy for injury done him in his person (see p 563 of *LaBlue*).

What our Supreme Court appears to have said by its decision in *Powers* v. *City of Troy* (1968), 380 Mich 160, is that an unborn child may be a "person" for the purpose of some laws but will not be a "person" for the purpose of other laws.[1] Such a view is less than consistent in keeping with fundamental constitutional guarantees of due process and equal protection of the laws. To say that one may kill some human beings—those who have been born —and be held responsible under the law, and that one may kill other human beings—those who have not yet been born—and go free, is a denial of equal

---

[1] In *Powers* there are five separate opinions for affirmance and a sixth opinion dissenting. All however:

"* * * [C]onfine ourselves strictly to the meaning of a 'person' within the wrongful death act. The assigned Justice, and any Justice signatory hereto, expressly limit the views they here express to the interpretation of the statute which is the subject of judicial construction."

The *Powers* Court carefully limited its decision to the question of the statutory construction of the Michigan wrongful death act then in effect, CL 1948, § 691.581 *et seq.* (Stat Ann 1959 Cum Supp § 27-.711 *et seq.*).

The Michigan Supreme Court did not resolve the equal protection arguments in the *Powers* case. I feel that the question whether denying the next of kin of a fetus the right to sue under the wrongful death act amounts to a denial of equal protection under the United States and Michigan Constitutions, being one of first impression, is important enough to command an answer. (See discussion *infra.*)

protection of the laws and ought not to be condoned by any court. A plain reading of the Michigan wrongful death act[2] makes clear that its primary purpose was to make wrongdoers liable for damages when they killed a "person" through negligence, or negligently inflicted injuries which resulted in death. But such a statute, in order to be constitutional, must apply with equal force to all "persons" who are killed as a result of another's negligence. The constitutional guarantees of due process and equal protection of the laws should apply to Baby Boy Pinet, and we should not discriminate against such a "person" because he is as yet unborn. By denying plaintiff administrator in this case the right to bring this action, the State seems to sanction the negligent killing of an unborn human being and is providing no redress for such a wrong.

I would reverse the judgment of the trial court, and allow the plaintiff administrator to bring this action.

---

[2] "Whenever the death of a *person* or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in *every such case*, the person who, or the corporation which would have been liable, if death had not ensued, *shall be liable to an action for damages* * * * '." CLS 1961, § 600.2922 (Stat Ann 1962 Rev § 27.2922). (Emphasis added.)