O'NEILL v. MORSE

OPINION OF THE COURT

1. DEATH—WRONGFUL DEATH ACT—STATUTES.

The obvious purpose of the wrongful death statute is to provide an action for wrongful death whenever, if death had not ensued, there would have been an action for damages (MCLA § 600.2922).

2. DEATH—WRONGFUL DEATH—COMMON LAW—DAMAGES.

The statutory wrongful death action is coextensive with the common-law right of action for damages (MCLA § 600.2922).

3. DEATH—WRONGFUL DEATH ACTION—INFANT EN VENTRE SA MERE —STATUTES.

Plaintiff's decedent, an eight-month-old viable infant *en ventre sa mere* at the time of the injury which caused his death, was a person within the meaning of the wrongful death statute and the administrator of the infant's estate can maintain an action for damages under that statute (MCLA § 600.2922).

DISSENTING OPINION

BLACK and ADAMS, JJ.

4. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

*The primary rule of statutory construction is to ascertain and declare the intention of the legislature, and to carry such intention into effect to the fullest degree.*

5. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT — ORDINARY MEANING.

*The first and basic rule of statutory construction is that all portions of statutory provisions brought under scrutiny should*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 22 Am Jur 2d, Death §§ 2–11.
[2] 22 Am Jur 2d, Death §§ 2, 115, 126, 140.
[3] 22 Am Jur 2d, Death §§ 142–144, 147–149.
    Action for death of unborn child.  15 ALR3d 992.
[4, 5, 7, 8] 50 Am Jur, Statutes § 223.
[6, 7] 22 Am Jur 2d, Death § 6.
    Action for death of unborn child.  15 ALR3d 992.
[9] 1 Am Jur 2d, Actions §§ 22–27.

*be read together and considered for accurate identification of the will of the legislature and the other rule is that words of a statute are to be taken in their ordinary meaning.*

6. STATUTES—CONSTRUCTION—WRONGFUL DEATH—FETUS.

*An unborn or stillborn fetus simply could not and cannot succeed in leaving a "widow", a "wife", a "spouse", or "next of kin who suffered such pecuniary injury" nor could any legislator when statutes were enacted in 1848, 1939 and 1965 reasonably have conceived otherwise.*

7. DEATH—WRONGFUL DEATH ACT—LEGISLATIVE INTENT—PERSON.

*It was the wrongful taking of a breadwinning or otherwise pecuniarily supportive person which the legislature had in mind, all the way through, in the several wrongful death acts when it dealt successively with the wrongful death of a "person" and the wrongful death of "such deceased person" (MCLA § 600.2922).*

8. STATUTES — CONSTRUCTION — CONSTITUTIONAL LAW — LEGISLATIVE INTENT—COURTS.

*Neither the Fourteenth Amendment nor the Michigan Constitution may, without saying so, amend any Michigan statute; they may destroy such a statute, depending upon the Michigan Supreme Court's interpretation and application of it but it is for that Court to say what the legislature meant by employed language when conflicting constructions of such a statute are pressed upon that Court (US Const, Am 14).*

9. ACTION ON THE CASE—REMEDIES.

*Action on the case is an outgrowth of the principle that, whenever the law gives a right or prohibits an injury, it will also afford a remedy; hence, where there has been an injury for which none of the established forms of actions will lie, an action on the case may be maintained.*

Appeal from Court of Appeals, Division 3, Fitzgerald, P. J., and R. B. Burns and Bronson, JJ., affirming Saginaw, Fred J. Borchard, J.  Submitted January 8, 1971.  (No. 16 January Term 1971, Docket No. 52,693.)  Decided July 7, 1971.

20 Mich App 679 reversed.

Complaint by James E. O'Neill, administrator of the estate of Baby Boy Pinet, deceased, against Eldon Morse, Bernice Morse, and Gary R. Root, for damages under the wrongful death act. Summary judgment for defendants. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Reversed and remanded.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Smith & Brooker, P. C.* (by *Webster Cook* and *Mona C. Doyle*), for defendant Gary R. Root.

*Heilman, Purcell, Tunison & Cline,* for defendants Eldon Morse and Bernice Morse.

T. E. BRENNAN, J. The case before us is indistinguishable upon its facts from the case of *Powers* v. *City of Troy* (1968), 380 Mich 160.

The complaint here alleges that plaintiff's decedent, Baby Boy Pinet, was an eight-month-old viable infant *en ventre sa mere* at the time of the injury which caused his death.

Action was brought under Michigan's wrongful death statute. MCLA § 600.2922 (Stat Ann 1971 Cum Supp § 27A.2922). By motion for summary judgment, defendants raised the issue of whether the plaintiff's decedent was a person within the meaning of that statute.

Plaintiff answered the motion, contending that his decedent was a person within the meaning of the wrongful death statute, and further arguing that his decedent was a person within the meaning of the Fourteenth Amendment to the United States Constitution; that his right of action may not be denied

without depriving him of a vested property right without due process of law.

We lay the constitutional question aside.

Intervening since our decision in *Powers* is the case of *Womack* v. *Buchhorn* (1971), 384 Mich 718, decided at this term.

In *Womack,* we overruled *Newman* v. *Detroit* (1937), 281 Mich 60, and held that a common-law action does lie in this state for prenatal injuries.

*Womack* being the applicable rule of common-law tort liability, we have only to apply the wrongful death statute to the facts of this case.

The first section of that statute reads as follows:

"Sec. 2922.(1)  Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.  All actions for such death, or injuries resulting in death, shall be brought only under this section."  MCLA § 600.2922 (Stat Ann 1971 Cum Supp § 27A.2922).

The obvious purpose of the statute, originally enacted as PA 1848, No 38, is to provide an action for wrongful death whenever, *if death had not ensued,* there would have been an action for damages.  *Womack* settled the question of whether, if death had not ensued, Baby Boy Pinet would have had an action for damages.

The statutory wrongful death action is co-extensive with the common-law right of action for damages.

We have never supposed that the 1848 legislature intended only to provide an action for wrongful death under those circumstances in which there was precedent for recovery of damages in cases reported before 1848. It would be anomalous indeed if we were to have two co-existing bodies of common-law tort liability in Michigan—one static and frozen as of 1848 for wrongful death and one living and growing to apply in other cases.

Justices who felt no action should lie for the wrongful death of an unborn person subscribed to the following statements in *Powers* v. *City of Troy, supra*:

"Appellee, *per contra,* premises his argument on the traditional view that to hold a fetal child under our death act to be a 'person' we, in legal effect, judicially amend a statute which has been construed since its enactment over a hundred years ago to exclude the cause of action contended for by appellant.   *   *   *

"Rather we rest our decision squarely upon the fact that at the time our wrongful death act was passed the legislature used the term 'person' in its ordinary, generally accepted meaning at that time.   *   *   *

"We are not convinced that 'person' in its ordinary signification in 1848 when our death act was passed included the concept of a fetal child. It should be noted and emphasized that we deal here, not with a cause of action which existed at common law. We do not face here the question of broadening the base of recovery in an action already recognized at common law. We deal with a statute in derogation of the common law.

*     *     *

"Considering the plain import of the word 'person' at the time of enactment of our statute and its uniform interpretation through the years, we feel obligated to accord to the term its 'ordinary signification' when legislatively employed."

No citation of authority was provided in *Powers* to establish the historical accuracy of those conclusions. It is not accurate to assume that our recent explosion of medical knowledge on the subject of prenatal life constituted a complete reversal of previous thinking on the subject.

The instructive dissent of *Mr. Justice Boggs,* in *Allaire* v. *St. Lukes Hospital,* 184 Ill 359 (56 NE 638), at 368, was written in 1900. His view has been largely adopted in this country.

The majority in that case held:

"That a child before birth is, in fact, a part of the mother and is only severed from her at birth, cannot, we think, be successfully disputed."

Justice Boggs wrote:

"Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the foetus is capable of independent and separate life, and that though within the body of the mother it is not merely a part of her body, for her body may die in all of its parts and the child remain alive and capable of maintaining life when separated from the dead body of the mother."

If the mother can die and the fetus live, or the fetus die and the mother live, how can it be said that there is only one life?

If tortious conduct can injure one and not the other, how can it be said that there is not a duty owing to each?

The phenomenon of birth is not the beginning of life; it is merely a change in the form of life. The principal feature of that change is the fact of respiration. But the law does not regard the incidence of respiration as the sole determinative of life. Respiration can be artificially induced or mechanically supplied. Life remains.

That the fetus cannot be seen is hardly the measure of life. That it cannot cry or see or remember—can these things control its right to live?

What of the capacity for "independent" life?

A baby fully born and conceded by all to be "alive" is no more able to survive unaided than the infant *en ventre sa mere*. In fact, the babe in arms is less self-sufficient—more dependent—than his unborn counterpart.

Does he want to eat? He cannot take himself to his mother's breast, or even discover the use of it without her help. He cannot keep himself warm or dry or ward off danger. He lives by the sufferance of others, demanding the means of sustaining his life by the noisy, endearing, obvious fact of his presence.

The demands of the unborn child are no less total, but they are enforced by physical rather than emotional attachments. Ensconced and protected, he takes what he needs without asking. Only the conscious or negligent acts of others can deprive him of sustenance.

The phenomenon of birth is an arbitrary point from which to measure life. True, we reckon age by counting birthdays. The Chinese count from New Years. The choice is arbitrary.

Birth may be natural, where the fetus has commenced the process by chemical changes within himself, and the mother has cooperated; it may be

intentional, as in the case of Cesarean section or induced labor; or it may be accidental, as where the child is separated from the mother by trauma.*

One need not be alive in order to be born; as the delivery of stillborn babies demonstrates. Neither is it possible for one to be born alive unless he be living prior to the birth.

A fetus having died within its mother's womb is dead; it will not come alive when separated from her. A fetus living within the mother's womb is a living creature; it will not die when separated from her unless the manner, the time or the circumstances of separation constitute a fatal trauma.

The fact of life is not denied.

Neither is the wisdom of the public policy which regards unborn persons as being entitled to the protection of the law.

PA 1968, No 292, constitutes a legislative recognition of the *personhood* of the unborn:

"600.2045 Guardian ad litem for *unborn persons*. [M.S.A. 27A.2045].

"Sec. 2045. (1) If in an action or proceeding, other than in probate court, it appears that a person not in being may become entitled to a property interest, real or personal, legal or equitable, involved in or affected by the action or proceeding, and the interest of the unborn person is not or cannot otherwise properly be represented and protected, the court, upon its own motion, or upon the motion of any party, may appoint a suitable person to appear and act as guardian ad litem of the unborn person. The guardian ad litem is authorized

---

* Widely reported was the March 20, 1971, birth of one Kimberly Sue Bange, found alive and in good condition some distance from the body of her mother, killed in a fatal auto accident. Termed "a Cesarean section by violence," the event, whether true or not, establishes a useful hypothetical case; suppose Kimberly Sue had also been found dead. How many "persons" would have died in the crash? How many wrongful deaths?

to engage counsel and do whatever is necessary to defend and protect the interest of the unborn person. A judgment or order made after the appointment shall be conclusive upon the unborn person for whom a guardian was appointed.

"(2) The guardian ad litem may be removed by the court which appointed him, without notice, when it appears to the court to be for the best interests of the ward. The guardian ad litem may be allowed reasonable compensation by the court appointing him, to be paid and taxed as a cost of the proceedings as directed by the court." MCLA § 600.2045 (Stat Ann 1971 Cum Supp § 27A.2045). (Emphasis added.)

If property interests of unborn persons are protected by the law, how much more solicitous should the law be of the first unalienable right of man—the right to life itself?

There remains the question of whether the statutory action for wrongful death contemplates an action for the wrongful death of an unborn child, in the light of the unitary and interdependent provisions of PA 1939, No 297, and sections 114 and 115 of the probate code of the same year, 1939.

These statutes were interpreted in *Breckon* v. *Franklin Fuel Company* (1970), 383 Mich 251.

We there held that damages recoverable in wrongful death actions were limited to pecuniary injury, reasonable medical, hospital, funeral and burial expenses, and conscious pain and suffering, and that the concept of "pecuniary injury" was further delineated by the probate code provision requiring distribution of such pecuniary loss among "dependents of the decedent."

We have never held, however, that "dependents of the decedent" were limited to those persons who received actual support and maintenance from the decedent during his lifetime.

In *In re Olney's Estate* (1944), 309 Mich 65, we held that a husband was entitled to the value of his wife's services, less the reasonable cost of her maintenance, and that such loss of services constituted a "pecuniary loss" recoverable by him as administrator of her estate, and distributable to him as a "dependent".

So, too, in the case of minor children, parents are entitled to the net value of their children's services; these are pecuniary injuries with respect to which the parents stand in the capacity of dependents for the purpose of distribution under the probate code.

Admittedly in the case of very young or stillborn children, the value of prospective filial service is not easy to prove.

But pecuniary injuries are alleged in this cause, and no issue has been made of it in this appeal based upon the motion for summary judgment.

Reversed and remanded.   Costs to plaintiff.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.

BLACK, J. (*dissenting*).   This case, dealing as in *Breckon* v. *Franklin Fuel Company* (1970), 383 Mich 251 with the same unitary statutes as are cited at the margin,[1] is fairly entitled to the same

---

[1] PA 1939, No 297; CLS 1961, § 600.2922; MCLA § 600.2922 (Stat Ann 1971 Cum Supp § 27A.2922) as amended by PA 1965, No 146. (Wrongful Death Act.)

PA 1939, No 288; CL 1948, §§ 702.114, 702.115; MCLA §§ 702.114, 702.115 (Stat Ann 1962 Rev § 27.3178[184], 1971 Cum Supp § 27-.3178[185]) as amended by PA 1965, No 181 (Portion of Probate Code of 1939 headed "SETTLEMENT OF DEATH AND SURVIVAL ACTIONS—DISTRIBUTION OF PROCEEDS.")

In the ensuing opinion these statutes will come to reference generally as "the acts of 1939." Their conjoined purpose was reviewed in detail when *Currie* v. *Fiting* (1965), 375 Mich 440, 484, 485, and then *Breckon,* came to discussion and divisive decision.

textual beginning as the Court employed for
*Breckon.* To quote *Breckon* at 264, 265:

"All of which brings to the fore that judicial
obligation which arises when one party to litigation
demands that the Court apply a controlling statute
one way and his adversary insists that it should be
applied precisely the other way.

"50 Am Jur, Statutes, § 223, pp 200–203, speaks
tersely the duty called into play here:

" '§ 223. *Legislative Intent as Controlling Fac-
tor.*—In the interpretation of statutes, the legisla-
tive will is the all important or controlling factor.
Indeed, it is frequently stated in effect that the
intention of the legislature constitutes the law. *The
legislative intent has been designated the vital part,
heart, soul, and essence of the law, and the guiding
star in the interpretation thereof.* Accordingly, the
primary rule of construction of statutes is to ascer-
tain and declare the intention of the legislature, and
carry such intention into effect to the fullest degree.
A construction adopted should not be such as to
nullify, destroy, or defeat the intention of the legis-
lature.' (Emphasis by present writer.)"

For some reason no thoughtful trial lawyer or
trial judge is able to rationalize on legal ground,
these statutes of 1939 have—since handing down of
*Burns* v. *Van Laan* (1962), 367 Mich 485—been
treated by some here as exempt from *all* rules of
statutory construction. Why the provisions there-
of, plucked out and set apart from all other statutes,
should be regarded as open to judicial amendment
*without word or thought for legislative intent,* is
pure mystery; no reason being deigned in or upon
any page of our books even after repeated chal-
lenge. *Currie* v. *Fiting, supra,* is a prime example
of this state of affairs, the issue in that case having
been right of suit for alleged pecuniary injury and

eligibility of survivors to distributive proceeds—under the mentioned acts of 1939.

This writer, slated now to contribute an offering prior to scriven by or on behalf of a majority of the Justices, proposes to lance our feverish disagreement with aim toward ascertainment as now due of the specific issue of legislative intent and purpose. As before in *Powers* v. *City of Troy* (1968), 380 Mich 160, 182–185, I do not care to join others for today's forthcoming new tour through philosophy, theology, science and legal writings dehors Michigan *where statutes corresponding with or even akin to those now before us have never come to enactment.*

I begin by reference to two mature and obviously necessary rules of statutory construction. The first and *basic* one is that *all* portions of statutory provisions brought under scrutiny should be read together and considered for accurate identification of the will of the legislature.

"The basic rule governing the matter is to ascertain and give effect to the legislative intent. *City of Grand Rapids* v. *Crocker,* 219 Mich 178; *Boyer-Campbell Co.* v. *Fry,* 271 Mich 282 (98 ALR 827); *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich 225. This requires that the clause in question shall be read in connection with other pertinent provisions of the act and that a meaning shall be given thereto consistent with the general purpose sought to be accomplished." (*Roberts Tobacco Company* v. *Department of Revenue* [1948], 322 Mich 519, 530).

The other is that which most recently was reiterated unanimously in *Detroit* v. *Tygard* (1968), 381 Mich 271, 275:

"Perforce we say as we have said uniformly

before in determining legislative intent we accord words their ordinary meaning:

" 'The words of a statute are to be taken in their ordinary signification and import.' *Green* v. *Graves* (1844), 1 Doug (Mich) 351, 354."[2]

Now for *our* unitary acts of 1939, as amended, and their relation to *our* original statute of 1848, paying no attention to foreign statutes and interpretations which no reasonable mind or man could seriously fit to *our* said statutes.

In *Currie, supra* at 465, the writer called upon the Brethren for response to pointed questions purposed toward ascertainment of the then called up intent of the legislature as regards the aforesaid acts.[3] There was no answer or hint of answer then, anywhere in the 49 pages of *Currie*. Now I try again, hoping that the Brethren this time will join in framing issue *whether*, by the acts of 1939 as amended, *the legislature intended to provide that* " 'new in its species, new in its quality, new in its principle, in every way new,' " and wholly *"independent cause of action for the purpose of compensating certain dependent members of the family*

---

[2] For additional authorities adhering to this rule of construction see 16 Callaghan's Michigan Digest, § 91, pp 483, 484, and 1971 pocket supplement at pages 157, 158. It was written tersely and perhaps best, by quoting Best, in *Attorney General* v. *The Bank of Michigan*, Harr Ch 315, 324:

" 'Again, the intent of the legislature is not to be collected from any particular expression, but from a general view of the whole of the act:' *Per Best, Ch. J., 3 Bing., 196; Dwarris on Statutes, 47, 48.*"

[3] "Just what legislative assembly intended that the enacted, reenacted, generations-known, and currently effective composite, 'pecuniary injury resulting from such death,' should include and permit recovery of damages—of any nature whatever—on behalf of nondependent parents of a noncontributing adult child? Was it the convocation of 1848? If so, where is the evidence of such 1848 intent? Or was it the assembly of 1873? Why, as to that assembly? Or was such intention evinced when the legislature amended the death act in 1939 and, at the same time, inserted said section 115 in the probate code? If so, where is the evidence of 1939 intent to authorize such recovery?"

·

for the deprivation, *pecuniarily,* resulting to them from his ['the injured person'] wrongful death", *in favor of anyone assigning the wrongful taking of a fetus.* (The quotations are taken from *Michigan Central R. Co.* v. *Vreeland* [1913], 227 US 59, 69 (33 S Ct 192, 195, 57 L Ed 417, 421), adopted by our Court in *Lincoln* v. *Detroit & Mackinac R. Co.* [1914], 179 Mich 189, 204).

In *Currie, supra* at 466, the entire wrongful death act of 1848 was reproduced; my then purpose being that of identifying the legislative intent by utilizing a former regular practice of the legislature (discontinued with the compilation of 1929). That practice was the citation by marginal appendages, in the respective compilations, of extant court decisions construing and applying the theretofore employed statutory language. On the occasion of *Currie* the reproduction was taken from the compiled laws of 1871.

Now and below I have had reproduced the act of 1848 from the "Laws of Michigan" as then published.[4] Next and below I have inserted today's

---

4                LAWS OF MICHIGAN.

                      No. 38.

AN ACT requiring compensation for causing death by    Cause of ac-
          wrongful act, neglect or default.    tion defined.
    Section 1. *Be it enacted by the Senate and House of Representatives of the State of Michigan,* Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, (if death had not ensued,) have entitled the party injured to maintain an action, and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.
    Sec. 2. Every such action shall be brought by, and in the names of the personal representatives of such

outstanding counterpart of the act of 1848, por-
trayed by section 2 of aforesaid act 297 of 1939, as
amended without change by PA 1961, No 236, and
as amended without relevant change by PA 1965,
No 146.[5] My purpose here is to portray demonstra-

deceased person, and the amount recovered in every
such action shall be for the exclusive benefit of the
widow and next of kin of such deceased person, and
shall be distributed to such widow and next of kin in
the proportions provided by law in relation to the
distribution of personal property, left by persons dying
intestate; and in every such action, the jury may give
such damages as they shall deem fair and just, with
reference to the pecuniary injury resulting from such
death, to the wife and next of kin of such deceased
person.

*By whom suit is to be brought, for whose benefit, and measure of damages.*

Approved February 12, 1848.

---

[5]          [No. 146.]

AN ACT to amend section 2922 of Act No. 236 of the Public
Acts of 1961, entitled "An act to revise and consolidate the statutes
relating to the organization and jurisdiction of the courts of this
state; the powers and duties of such courts, and of the judges and
other officers thereof; the forms and attributes of civil claims and
actions; the time within which civil actions and proceedings may be
brought in said courts; pleading, evidence, practice and procedure
in civil actions and proceedings in said courts; to provide remedies
and penalties for the violation of certain provisions of this act; and
to repeal all acts and parts of acts inconsistent with, or contravening
any of the provisions of this act," being section 600.2922 of the Com-
piled Laws of 1948.

*The People of the State of Michigan enact:*

Section amended.

Section 1. Section 2922 of Act No. 236 of the Public Acts of 1961,
being section 600.2922 of the Compiled Laws of 1948, is hereby
amended to read as follows:

600.2922 Wrongful death; liability of tort-feasor. [M.S.A. 27A.2922]

Sec. 2922. (1) Whenever the death of a person or injuries resulting
in death shall be caused by wrongful act, neglect or default, and the
act, neglect or default is such as would, if death had not ensued, have
entitled the party injured to maintain an action and recover damages,
in respect thereof, then and in every such case, the person who or the
corporation which would have been liable, if death had not ensued,
shall be liable to an action for damages, notwithstanding the death
of the person injured, and although the death shall have been caused
under such circumstances as amount in law to felony. All actions
for such death, or injuries resulting in death, shall be brought only
under this section.

tively the way in which the legislature has told all willing to read that "person" and "such deceased person," as employed in 1848, again in 1939, and then again in 1965, contemplated—naturally, precisely and sensibly—a living human being whose wrongful death could and did cause that requisite "pecuniary injury" to, or "pecuniary loss" suffered by, a surviving "widow", "wife", "spouse", and "next of kin".

*Just what legislative assembly of Michigan intended,* by contextual employment of such commonly understood words and phrases as

---

Same; persons entitled to sue; damages, distribution.

(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the total pecuniary loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person, as shown by the evidence introduced upon the trial of such case. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total pecuniary loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be assets of the estate of the deceased.

This act is ordered to take immediate effect.

Approved July 12, 1965.

"person",

"widow and next of kin of such deceased person",

"wife and next of kin of such deceased person",

"decedent",

"dependents of the decedent",

"each of such dependents",

"reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of inflicting of such injuries and his death",

and particularly by repeated limitation of "pecuniary" benefits to the

"surviving spouse and next of kin who suffered such pecuniary injury",

*to create a statutory cause for wrongful death of an unborn or stillborn fetus?*

This gentle comment is submitted: An unborn or stillborn fetus simply could not and cannot succeed in leaving a "widow", a "wife", a "spouse", or "next of kin who suffered such pecuniary injury". Nor could any legislator of 1848, or of 1939, or of 1965, reasonably have conceived otherwise. If the Brethren purpose to write "nay" to this, I shall read their reasons with controlled and utmost deference.

For further enlightenment with respect to the legislative intent of 1848 (indeed for the overall intentional purpose of our 1939-strengthened version of Lord Campbell's Act), see this Court's quotation of the original British Act itself (*Hyatt v. Adams* [1867], 16 Mich 180, 194), noting particularly that the action must then have been brought "by and in the name of the executor or administrator of the person deceased, and to be for the benefit of the *wife, husband, parent* or *child* of the person whose death shall have been so caused". Would the wrongful prevention of birth into life have qual-

ified then, any more than now, for action under such a statute? I think it proper to reply that, both in *Powers* and now in *O'Neill,* plaintiff's counsel and others have concentrated too much on that one word "person", and too little on the purposeful rest of these unitary statutes.

Refer (*ante* at p 141) to quotation of *Detroit* v. *Tygard.* Employment by our legislature of the noun "person" in 1848, and again in 1939 and 1965, permits no more today than a century ago any tensional stretch of that noun's common or ordinary understanding. Looking back at its original use both in England and here, it has occurred to the writer that legislators of the past century[6] may have been just as familiar with English communicative usages as we are supposed to be, and that the common grasp of ordinary words employed then might be obtained by consulting what reputedly remains the most thorough and authoritative dictionary and encyclopedia that was published during the 19th century. Turning upon that thought to the 10-volume, 50 to 55 pound Century Dictionary and Cyclopedia (copyrighted 1889–1902 and published by the Century Company of New York), we find in Volume V the noun "person" defined and discussed in all of its aspects (pp 4414, 4415). Nowhere on any of these pages is there any suggestion that individual "person" meant anything except a living and breathing human. Arriving at Division "9" of the definitions, we find this:

"9. In *law:* (a) A living human being. (b) A human being having rights and duties before the

---

[6] We are committed, until at least the Court finds and defines some allegedly better rule *moderne,* to the interpretive proposition that the legislative will is determinable property by the intent of the assembly that passd the statute in question. See COOLEY, J., writing for the Court in *Dewar* v. *People* (1879), 40 Mich 401, 403, and *Husted* v. *Consumers Power Co.* (1965), 376 Mich 41, 54.

law; one not a slave. In old Roman law slaves were not considered to be persons. (c) A being, whether natural or artificial, whether an individual or a body corporate other than the state, having rights and duties before the law."

I find nothing detracting from this in Webster's New International Dictionary (2d ed 1956), p 1828. See on that page "8. *Law*".

It is true that more can be said, of simple reasoning brewed of common understanding of prevalently familiar words and phrases, for holding that it was the wrongful taking of a breadwinning or otherwise pecuniarily supportive person which the legislature had in mind, all the way through, when that body dealt successively with the wrongful death of a "person" and the wrongful death of "such deceased person." The above however should be enough for initial writing.

*To conclude:*

1. I cannot accept for determination plaintiff's constitutional attack upon the mentioned statutes,[7] for even if we should decide that issue in his favor the result would have to be destruction of the very cause he has pleaded, along with all other pending and future actions of its statutory kind. *Neither the Fourteenth Amendment nor our own Constitution may,* without saying so, *amend* any Michigan statute. They may destroy such a statute, depend-

---

[7] The entire thrust of plaintiff's appeal is submitted by this stated question:

"II. Does the state deny 'due process of law' and the 'equal protection of the laws' to a person when it declares that an unborn child, negligently killed by a tortfeasor, is not a 'person,' and that therefore his estate may not bring an action for wrongful death under the Michigan wrongful death act?"

(The question itself is faulty, in that it assumes that one's "estate" may sue under the statute. That statute provides precisely that suits thereunder must be brought by the decedent's fiduciary. An estate consists of property, real of personal, and is not as yet an eligible plaintiff suitor.)

ing upon our interpretation and application of it, but it is for us to say what the legislature meant by employed language when conflicting constructions of such a statute are pressed upon us.

I *do* accept plaintiff's appeal as a renewed motion (as in *Powers* v. *City of Troy* [1968], 380 Mich 160) for judicial revision of all sections of the unitary acts of 1939 as amended; a revision which if ordered will render eligible thereunder suits by appointed fiduciaries of the unborn or stillborn to recover damages for "pecuniary injury" on behalf of what necessarily must be newly designated beneficiaries. On that issue, that alone, an already divided Court has squared off.

2. *Womack* v. *Buchhorn* 1971, 384 Mich 718 has been decided since submission of the case at bar. Now it is urged that our determination of that *common-law* action, brought as it was (not by a fiduciary of a statutory "decedent" but *by an eight year old child*) for injuries caused by negligence "during the fourth month of pregnancy," authorizes for the first time a statutory action for wrongful death on behalf of the "surviving spouse and next of kin" of an unborn or stillborn fetus.

It is a sufficient answer to point out that this Court expressly confined its *Womack* decision to a holding that an action will lie *at common law*, by a person prenatally injured and hence born injured, for causal negligence. Such common-law action has to be brought, of course, by or on behalf of a living human being. The measure of damages must be such as have been suffered personally since birth, and as will be suffered personally in the future. No cause for "pecuniary injury" or "pecuniary loss," on behalf of others whether "spouse" or "kin," was authorized by *Womack*.

All *Womack* did was that which this Court may ever do as maker and molder of the common law of Michigan. Was it not suggested in *Currie, supra* at 486, 487, that it would be a bit more lawful and upright should the Court fashion—as now in *Womack* —a common-law action whenever as in *Currie* we perceive a definite wrong; a wrong knowing no remedy? Was not another like suggestion made (by separate opinion of *Abendschein* v. *Farrell* [1969], 382 Mich 510, 524–527, supported then by Justice T. G. KAVANAGH), that our Court may at will create a remedy for any disclosed wrong when, presently, there is no known remedy therefor?

It may be well to repeat here this Court's employment of the principle to which allusion has just been made (*Creek* v. *Laski* [1929], 248 Mich 425, 65 ALR 1113; employed later in *B. F. Farnell Company* v. *Monahan* [1966], 377 Mich 552, 556):

" 'Action on the case—"is an outgrowth of the principle that, whenever the law gives a right or prohibits an injury, it will also afford a remedy. Hence, where there has been an injury for which none of the established forms of action will lie, an action on the case may be maintained, it being no objection that there is no precedent for the particular action, since the action is suited to every wrong and grievance that a person may suffer, and varies according to the circumstances of the case." 11 C J p 4.' "

I vote to affirm the judgment entered below (20 Mich App 679).

ADAMS, J., concurred in the result.